TULKKU v MACKWORTH REES DIVISION OF AVIS
INDUSTRIES, INC (ON REMAND)

Docket No. 48136. Submitted June 10, 1980, at Detroit.—Decided
November 20, 1980. Leave to appeal applied for.

Karl Tulkku brought an action against Mackworth Rees Division
of Avis Industries, Inc., and Illinois Tool Works, Inc., for
personal injuries sustained allegedly due to defendants' negli-
gence and breaches of warranties. Defendants prevailed in the
trial court, which judgment was affirmed by the Court of
Appeals upon plaintiff's appeal, 76 Mich App 472 (1977). Plain-
tiff appealed to the Supreme Court which remanded the case to
the trial court for a new trial, 406 Mich 615 (1979). Plaintiff
and defendants thereafter moved for rehearing. The Supreme
Court, in lieu of granting rehearing, remanded the case to the
Court of Appeals for consideration of the issues of the scope of
the retrial and the applicability of its decision in *Placek v City
of Sterling Heights,* 405 Mich 638 (1979), and newly enacted
products liability statutes, 407 Mich 1148 (1979). *Held:*

1. Both the negligence and warranty claims should be consid-
ered upon retrial.

2. The comparative negligence principles of *Placek* should
apply to plaintiff's negligence claim on retrial, but any recovery
should not be diminished by his own negligence if the liability

REFERENCES FOR POINTS IN HEADNOTES

[1] 57 Am Jur 2d, Negligence § 176.
63 Am Jur 2d, Products Liability §§ 32, 70.
[2, 7, 9] 57 Am Jur 2d, Negligence § 138.
63 Am Jur 2d, Products Liability §§ 32, 70.
[3] 57 Am Jur 2d, Negligence § 426 *et seq.*
Comment note on the doctrine of comparative negligence and its
relation to the doctrine of contributory negligence. 32 ALR3d 463.
[4, 6] 73 Am Jur 2d, Statutes § 347 *et seq.*
Retrospective application of state statute substituting rule of com-
parative negligence for that of contributory negligence. 37 ALR3d
1438.
[5] 73 Am Jur 2d, Statutes § 11.
[8] 63 Am Jur 2d, Products Liability §§ 26, 62 *et seq.*
[10] 63 Am Jur 2d, Products Liability § 126.

of the defendants arises from their failure to provide adequate safety devices.

3. The Legislature intended that the statutes pertaining to products liability actions should apply to all actions pending, accrued, or future, but it did not expressly include or exclude actions involving safety devices, despite the existence of case law holding that no negligence on the part of a plaintiff should be allowed as a defense in such actions.

4. The comparative negligence statutes are not applicable on retrial.

Remanded for new trial.

1. PRODUCTS LIABILITY — NEGLIGENCE — CONTRIBUTORY NEGLIGENCE — DESIGN OR MANUFACTURE OF SAFETY DEVICES.

Contributory negligence is no bar to recovery where evidence has been presented of a defendant's causal negligence in the design or manufacture of a safety device.

2. PRODUCTS LIABILITY — NEGLIGENCE — CONTRIBUTORY NEGLIGENCE — BREACH OF WARRANTY — JURY INSTRUCTIONS.

A plaintiff in an action for breach of warranty in the manufacture of a safety device, upon request, should be entitled to an instruction specifically informing a jury that any negligence on his part could not be considered a defense to the action.

3. NEGLIGENCE — COMPARATIVE NEGLIGENCE — CASE PRECEDENT — APPLICABILITY OF RULE.

The rule of comparative negligence should be applied to all appropriate cases in which trial should commence after the date of its announcement, including those actions which are retried because of a remand on any other issue.

4. STATUTES — PROSPECTIVE EFFECT — RETROSPECTIVE EFFECT — LEGISLATIVE INTENT.

Statutes should have prospective effect only unless a retrospective legislative intent clearly appears from the language or context of the statute, such as a statute dealing with the admissibility of evidence or remedial legislation.

5. STATUTES — REMEDIAL STATUTES.

A statute should be regarded as remedial in nature where it is designed to correct an existing law, redress an existing grievance, or introduce regulations conducive to the public good.

6. STATUTES — PRODUCTS LIABILITY — APPLICATION OF STATUTES — LEGISLATIVE INTENT.

The Legislature intended that the newly enacted statutes pertain-

ing to products liability actions should apply to all actions pending, accrued, or future (MCL 600.2945-600.2949; MSA 27A.2945-27A.2949).

7. PRODUCTS LIABILITY — NEGLIGENCE — RECOVERY — PROVISIONS FOR SAFETY.

The recovery of a plaintiff in a products liability action should not be diminished by his own negligence if the liability of the defendant arises from his failure to provide adequate safety devices.

8. PRODUCTS LIABILITY — MANUFACTURERS OF SAFETY DEVICES — STANDARD OF CARE.

Manufacturers of safety devices should not be considered insurers of the safety of working men but should take all reasonable precautions in designing and manufacturing safety devices.

9. PRODUCTS LIABILITY — PLAINTIFF'S NEGLIGENCE — MANUFACTURERS OF SAFETY DEVICES — STATUTES.

No negligence on the part of a plaintiff should exist as a defense to a products liability action as a matter of law where a defendant's liability arises out of the manufacture of a safety device, the comparative negligence statute notwithstanding (MCL 600.2949; MSA 27A.2949).

10. PRODUCTS LIABILITY — IMPLIED WARRANTY OF FITNESS — STRICT LIABILITY IN TORT.

The Michigan doctrine of implied warranty of fitness is virtually indistinguishable in concept and practical effect from the concept of strict liability in tort.

*Goodman, Eden, Millender & Bedrosian* (by *Joan Lovell, William Goodman,* and *James A. Tuck),* for plaintiff.

*Dice, Sweeney, Sullivan & Feikens, P.C.* (by *Ronald F. DeNardis),* for defendant Mackworth Rees.

*Kitch & Suhrheinrich, P.C.,* for defendant Illinois Tool Works, Inc.

Before: BASHARA, P.J., and D. C. RILEY and E. A.
QUINNELL,* JJ.

ON REMAND

E. A. QUINNELL, J. This matter is on remand to
this Court following the Supreme Court's decision
in *Tulkku v Mackworth Rees Division of Avis
Industries, Inc,* 406 Mich 615, 618-619; 281 NW2d
291 (1979). The facts, as stated by the Supreme
Court, are as follows:

"On October 4, 1967, plaintiff, Karl Tulkku, suffered
an injury to his left hand in a press accident a t the
Chrysler Sterling Stamping Plant. The press which
plaintiff was operating at the time of the accident was
one that required two operators for the completion of a
cycle. In order to activate the press, each operator was
required to depress two palm buttons and to hold them
down until the press had completed its downward cycle.
The palm buttons had been installed as safety devices
to prevent an operator's hand from being in the die
area while the press was in operation.

"At the time of the accident, plaintiff's co-worker had
depressed both of his palm buttons and plaintiff had
depressed his right-hand palm button while attempting
to blank a piece of metal caught in the rear of the press
with his left hand. With only three buttons depressed,
the press inexplicably cycled causing severe injury to
plaintiff's hand.

"Upon a subsequent investigation, it was discovered
that the plastic case on the snap-action microswitch in
plaintiff's left-hand palm button was broken in the area
where the cover was screwed to the top of the switch.
The broken plastic case caused the switch to fail with
the result that the press completed its cycle without the
palm button having been pushed.

"Plaintiff brought suit alleging both negligence and
breach of warranty against defendant Mackworth Rees,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

the manufacturer of the palm button assembly, and Illinois Tool Works, the manufacturer of the switch."

At trial, plaintiff had requested an instruction to the effect that contributory negligence would not be a defense if the defendants negligently failed to provide a proper, adequate, and suitable safety device and that such failure was a proximate cause of the plaintiff's injuries. The trial court declined to give the requested instruction but, instead, gave the standard jury instruction concerning contributory negligence, *i.e.,* that contributory negligence would bar plaintiff's negligence claim. As to the warranty claim, the court gave an "abuse of product" instruction that was agreed upon by all parties. The jury returned a general verdict in favor of the defendants.

The Court of Appeals had affirmed, 76 Mich App 472; 257 NW2d 128 (1977).

On further appeal, the Supreme Court reviewed available authorities and policy considerations and held:

"We, therefore, hold that contributory negligence is no bar to recovery where evidence has been presented of defendant's causal negligence in the design or manufacture of a safety device.

"Our holding today necessarily requires remand to the trial court for a new trial. We note that during the pendency of this appeal, this Court decided *Placek v Sterling Heights,* 405 Mich 638; 275 NW2d 511 (1979), and the Michigan Legislature enacted legislation which affects the manner in which products liability actions are to be treated by the courts of this state. MCL 600.2945; MSA 27A.2945. However, we must presently decline to consider the effect of *Placek* and that legislation, if any, on the holding we have reached today as this complex issue was neither argued nor briefed before us." 406 Mich 615, 623 (1979).

Promptly thereafter, plaintiff and defendants moved for rehearing. Both parties sought a determination from the Supreme Court as to whether the comparative negligence doctrine found in either the products liabiltiy statute or *Placek* would be applicable on retrial. In addition, defendants in their motion for rehearing sought a determination from the Supreme Court that the retrial would involve only the negligence issue of plaintiff's case "* * * in that plaintiff has already prosecuted his warranty theory under what this Honorable Court has determined to be the correct law".

The Supreme Court entered the following special order:

"*Motions for rehearing* considered and, in lieu of granting rehearing, this cause is remanded to the Court of Appeals for consideration of the issues of the scope of the retrial in this case and the applicability of *Placek v City of Sterling Heights,* 405 Mich 638 (1979), and MCL 600.2945; MSA 27A.2945 upon such retrial." 407 Mich 1148 (1979).

I. *Scope of Retrial.*

At the original trial, as noted, the court submitted to the jury the issue of defendants' negligence and also gave the standard jury instruction as to contributory negligence. The trial court also submitted the breach of warranty theory to the jury but did not specifically inform the jury that contributory negligence was not a defense to the breach of warranty claim, the nearest approximation of such an instruction being the following:

"In understanding, of course, the nature of the liability of the manufacturer based on a breach of an implied warranty, negligence and fault have no place in it and are not required to be proved."

In our view, having the benefit of cases decided since the trial of this case in October, 1975, the

jury was not properly instructed on the warranty count.

Many cases have noted the potential for jury confusion in a combined negligence/warranty action as to the effect of plaintiff's conduct; for instance, see *Vincent v Allen Bradley Co,* 95 Mich App 426; 291 NW2d 66 (1980). Upon request, plaintiff would have been entitled to an instruction specifically informing the jury that any negligence on the part of the plaintiff could not be considered as a defense to the warranty action. *Timmerman v Universal Corrugated Box Machinery Corp,* 93 Mich App 680; 287 NW2d 316 (1979).

Defendants argue that plaintiff did not preserve the issue for appeal either in this Court or in the Supreme Court, and therefore the jury verdict as to the warranty count is final and may not be retried. Plaintiff has made no response to the preservation issue, arguing only that because the contributory negligence issue and the abuse of product issue are so closely intertwined fundamental fairness requires a new trial as to both counts.

Counsel for the parties have cited few authorities in support of their respective positions, probably for the eminently sensible reason that there are no cases directly on point. In support of their procedural position, defendants cite *Vorrath v Garrelts,* 49 Mich App 142; 211 NW2d 536 (1973). There the trial court granted a judgment in favor of plaintiff for a debt and also imposed a mechanics lien. On appeal to the Court of Appeals, the mechanics lien was held void. Thereafter, plaintiff undertook proceedings supplemental to judgment in the trial court to collect the debt, and, on further appeal, the Court of Appeals determined that the initial reversal of the mechanics lien did not disturb the original judgment as to the debt.

Other cases hold, at least as a general rule, that, upon each new trial, a case must be tried just as if it never had been tried before. *Bathke v Traverse City,* 308 Mich 1; 13 NW2d 184 (1944), and cases cited therein. In *Snowden v Detroit & M R Co,* 194 Mich 87; 160 NW 414 (1916), the Supreme Court affirmed a trial court's grant of a new trial on a common law negligence count which the trial court originally had refused to submit to the jury, after a Supreme Court reversal of a judgment for plaintiff on a statutory count which the trial court had submitted to the jury, suggesting some discretion as to the scope of the retrial in a case involving multiple counts even though plaintiff had not filed a cross-appeal.

In the absence of any persuasive authority in favor of either plaintiff or defendants, we conclude that the new trial should include both the negligence and warranty counts. In the determination of the liability of a defendant, the distinctions between negligence actions and warranty actions are becoming increasingly blurred. *Owens v Allis-Chalmers Corp,* 83 Mich App 74; 268 NW2d 291 (1978), *Elsasser v American Motors Corp,* 81 Mich App 379; 265 NW2d 339 (1978), *Smith v E R Squibb & Sons, Inc,* 69 Mich App 375; 245 NW2d 52 (1976), *lv den* 399 Mich 804 (1977). As noted in *Vincent, supra,* the characterization and effect of a plaintiff's conduct with regard to a product can also lead to confusion. It would be unfair to the parties to permit the general verdict to stand as to the implied warranty count, reached after instructions which are not perceived to be incomplete, when a new trial must be held on the negligence count.

II. *Applicability of* Placek.

It is clear that the comparative negligence rule

announced in *Placek* is applicable to all appropriate cases in which trial commences after the decision date of *Placek,* including those in which a retrial is to occur because of remand on any other issue. *Placek, supra,* 667. Saving the "safety devices" issue for subsequent discussion, it is clear that the comparative negligence principles of *Placek* would apply to the negligence count on retrial of this case.

III. *Applicability of Statute.*

The accident out of which this litigation arose occurred on October 4, 1967. The statute (MCL 600.2945; MSA 27A.2945) was effective December 11, 1978. The general rule is that statutes have prospective effect only unless a retrospective legislative intent of the Legislature clearly appears from the language or context of the statute. Various exceptions to the rule exist. Statutes dealing with the admissibility of evidence are given retrospective effect. *Sherberneau v Metropolitan Life Ins Co,* 44 Mich App 339; 205 NW2d 213 (1973). Remedial legislation is also given retrospective effect. *Rookledge v Garwood,* 340 Mich 444; 65 NW2d 785 (1954), *Lahti v Fosterling,* 357 Mich 578; 99 NW2d 490 (1959), *Freij v St Peter's Evangelical Lutheran Church,* 72 Mich App 456; 250 NW2d 78 (1976), *lv den* 399 Mich 862 (1977). The *Freij* Court, quoting from *Rookledge, supra,* noted that a statute will be regarded as remedial in nature if it is designed to correct an existing law, redress an existing grievance, or introduce regulations conducive to the public good. The *Rookledge* Court also quoted approvingly from 50 Am Jur, Statutes, § 15, pp 33, 34 to the effect that legislation is regarded as remedial which abridges superfluities of former laws, remedying defects therein or mischiefs thereof, implying an intention to

reform or extend existing rights, and having for its purpose the promotion of justice and the advancement of public welfare and of important and beneficial public objects, such as the protection of the health, morals, and safety of society or of the public generally. The citation goes on to add that another common use of the term "remedial statute" is to distinguish it from a statute conferring a substantive right and to apply it to acts relating to the remedy, to rules of practice or courses of procedure, or to the means employed to enforce a right or redress an injury. The term "remedial" applies to a statute giving a party a remedy where he had none, or a different one, before.

With these standards in mind, we comfortably conclude that the Legislature intended that this statute have retroactive as well as prospective effect. In §§ 2946, 2947, and 2948 the Legislature purports to describe what is admissible evidence in a product liability action as defined in § 2945, thus addressing itself to the exception noted in *Sherberneau, supra.* There, further, can be no doubt that the Legislature thought it was redressing existing grievances on the part of defendants by providing certain evidentiary defenses to product liability actions and redressing existing grievances as to plaintiffs by providing that a plaintiff's negligence should not totally bar his recovery but merely operate to diminish his recovery. We conclude that the Legislature intended the statute to apply to all actions pending, accrued, or future.[1]

IV. *"Safety device" liability.*

---

[1] We deliberately refrain from citing *Jorae v Clinton Crop Service,* 465 F Supp 952 (ED Mich, 1979), as being in support of our position, even though the result which Judge Joiner reached in that case is identical with our own on the point here discussed. Judge Joiner also had other problem issues which are not present in our case, and we find it unnecessary to either approve or disapprove his resolution of those issues.

Having found that the comparative negligence statute applies retroactively and that *Placek* applies generally to retrial of the negligence count, we reach the critical issue of this remand proceeding, namely, whether the negligence of a plaintiff may be considered to reduce a plaintiff's recovery when the liability of the defendants is predicated upon their failure to provide adequate safety equipment.[2]

A. *Application of* Placek.

Plaintiff argues that the policy considerations underpinning *Funk v General Motors Corp,* 392 Mich 91; 220 NW2d 641 (1974), and the Supreme Court decision in *Tulkku, supra,* apply equally to a diminution of plaintiff's recovery and to a bar of plaintiff's recovery. Defendant argues that the harsh effects of contributory negligence have been abolished by *Placek* which was designed to promote a more equitable allocation of loss among all of the parties legally responsible in proportion to their fault and that, therefore, in any case in which *Placek* is applicable, the safety equipment analysis of *Funk* and *Tulkku* is not appropriate. Defendant's arguments miss the point of *Funk* and *Tulkku.* Those two cases are concerned with a problem distinct from the equitable allocation of a loss.

In its determination that contributory negligence does not bar recovery where the trier of fact may reasonably find that the failure to provide necessary safety equipment was the cause in fact of the injury, the *Funk* Court noted, *supra,* 104:

"The policy behind the law of torts is more than

---

[2] Lest it be said that all of the preceding discussion is mere dicta, we note that we would not reach this issue if we had determined that the date of the accident precluded the application of the statute or of *Placek.*

compensation of victims. It seeks also to encourage implementation of reasonable safeguards against risks of injury."

Similarly the *Tulkku* Court said, *supra,* 623:

"If we are to continue to foster the protection of the worker and to encourage manufacturers to take all reasonable precautions in designing and manufacturing safety devices, we cannot allow the discredited doctrine of contributory negligence to undermine these goals."

The worker has an incentive—the avoidance of injury to himself—to work as safely as permitted by the demands of his employment, the nature of the equipment furnished to him, and the frailties of mankind. To impose an additional economic sanction on a negligent plaintiff[3] ignores the definition of negligence. Without in the least suggesting that manufacturers are totally devoid of humanitarian considerations for workers' safety, we do suggest that workers' safety (and therefore workers' productivity through uninterrupted production) will be fostered and encouraged by our holding that a plaintiff's recovery may not be diminished by his own negligence if the liability of the defendants arises from their failure to provide adequate safety devices. Other panels of this Court have reached the same result. *Timmerman, supra, Stambaugh v Chrysler Corp,* 96 Mich App 166; 292 NW2d 510 (1980).

Before we are inundated with a flood of anguished howls from safety device manufacturers and their insurance carriers, we hasten to add that such potential defendants are not the insurers of the safety of working men. *Funk* encourages

---

[3] Different principles apply to a grossly negligent plaintiff, *Funk, supra,* 113, fn 18.

"implementation of *reasonable* safeguards against risks of injury". *Tulkku* encourages manufacturers "to take all *reasonable* precautions in designing and manufacturing safety devices". Nothing more, but nothing less, is required.

B. *Application of the statute.*

The statute broadly defines "product liability action" as

"an action based on any legal or equitable theory of liability brought for or on account of death or injury to person or property caused by or resulting from the manufacture, construction, design, formula, development of standards, preparation, processing, assembly, inspection, testing, listing, certifying, warning, instructing, marketing, advertising, packaging, or labeling of a product or a component of a product." MCL 600.2945; MSA 27A.2945.

Subsequent sections provide that certain types of evidence dealing with manufacture, alteration, and the issuance of written warnings shall be admissible in such actions.

The comparative negligence portion of the statute reads as follows:

"Sec. 2949 (1) In all products liability actions brought to recover damages resulting from death or injury to person or property, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff or the plaintiff's legal representatives, but damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff." MCL 600.2949; MSA 27A.2949.

Obviously, the applicability of this statute to safety device products liability cases has not previously been determined by the Michigan Supreme

Court. *Timmerman, supra,* held (with little discussion) that the statute did not apply in such cases. As to the applicability of comparative negligence statutes to strict liability cases generally, the jurisdictions of the country are apparently split, some applying such statutes despite language which arguably makes them inapplicable, *Murray v Fairbanks Morse,* 610 F2d 149 (CA 3, 1979), while others do not apply statutes which purport to cover only negligence actions to actions based on strict liability in tort, *Kinard v The Coats Co, Inc,* 37 Colo App 555; 553 P2d 835 (1976).[4]

New Jersey is one jurisdiction which applies its comparative negligence statute to strict liability cases generally but not to cases where liability is predicated on the existence of an inadequate safety device. *Suter v San Angelo Foundry & Machine Co,* 81 NJ 150; 406 A2d 140 (1979). In 1972, New Jersey had held that contributory negligence would not be available as a defense under either a negligence or a strict liability theory if the liability of the defendant resulted from the breach of a duty to install safety devices, reasoning that "It would be anomalous to hold that defendant has a duty to install safety devices but a breach of that duty results in no liability for the very injury the duty was meant to protect against". *Bexiga v Havir Manufacturing Corp,* 60 NJ 402, 412; 290 A2d 281 (1972), relied on by the

---

[4] Statutes and cases from other jurisdictions must be read with the understanding that liability normally is predicated on what is called strict liability in tort, 2 Restatement Torts 2, § 402A, p 347, with the effect of plaintiff's contributory negligence being governed by 3 Restatement Torts 2d, § 524, p 50. As noted in *Dooms v Stewart Bolling & Co,* 68 Mich App 5; 241 NW2d 738 (1976), *lv den* 397 Mich 862 (1976), the Michigan doctrine of implied warranty of fitness is worded differently, but is virtually indistinguishable in concept and practical effect. Thus the scope of comparative negligence statutes from other jurisdictions may be facially narrower, but equally as broad as Michigan's in application.

Michigan Supreme Court in *Tulkku.* In 1973, the New Jersey Legislature adopted a comparative negligence statute, providing in pertinent part:

"Contributory negligence shall not bar recovery in an action by any person to recover damages for negligence resulting in death or injury to person or property * * * but any damages sustained shall be diminished by the percentage sustained of negligence attributable to the person recovering." NJSA 2A:15-5.1.

In *Suter,* the New Jersey court was called upon to determine whether the act applied to a case in which plaintiff asserted liability against the defendant on the basis of strict liability arising out of the absence of a safety device. The trial court submitted the case to the jury under the statute. The jury found the plaintiff and defendant each 50 percent responsible for the ensuing personal injuries. The New Jersey Supreme Court concluded:

"We hold that the Comparative Negligence Act is applicable in strict liability to those situations in which contributory negligence would have been a defense. However, we are not expanding the concept of contributory negligence, *and comparative negligence is immaterial* when no contributory negligence exists either factually or as a matter of law." *Suter,* 406 A2d 140, 153. (Emphasis added.)

The situation in Michigan is identical to that in New Jersey. *Funk,* as refined by *Tulkku,* had determined that contributory negligence would not exist as a defense as a matter of law if defendant's liability arose out of an inadequate safety device; the Legislature then passed our comparative negligence statute, MCL 600.2949; MSA 27A.2949, providing in partinent part: "but damages sustained by the plaintiff shall be diminished in proportion

to the *amount of negligence attributed to plaintiff.*" (Emphasis added.) The Legislature did not either expressly include or expressly exclude safety device cases from the operation of the act, despite the previous existence of *Funk.* Under *Funk* and *Tulkku, no* negligence can be attributed to the plaintiff in a safety device case. Therefore, the comparative negligence statute has no applicability.

Remanded for new trial in conformity with this opinion.