BEALS v WALKER

Docket No. 65442. Argued November 9, 1981 (Calendar No. 1).—
    Decided December 23, 1982.

    Renold L. Beals, Jr., and Joyce E. Beals brought an action against
        Richard J. Walker for injuries suffered by Renold Beals, Jr.,
        while engaged in the repair of the defendant's grain elevator.
        The Tuscola Circuit Court, Martin E. Clements, J., denied the
        defendant's motion for a directed verdict. The court refused to
        give the plaintiff's requested charge on comparative negligence,
        and instructed the jury that the plaintiff's contributory negli-
        gence would bar recovery. The jury returned a verdict for the
        defendant. The Court of Appeals, J. H. Gillis, P.J., and Allen, J.
        (M. J. Kelly, J., dissenting), affirmed the judgment for Walker,
        but held that he should have been given a directed verdict
        (Docket No. 78-4454). The plaintiffs appeal.

        In an opinion by Justice Ryan, joined by Chief Justice Fitz-
    gerald and Justice Coleman, with Justice Williams concurring
    in the result, the Supreme Court held:

        The plaintiffs established a prima facie case of negligence,
    precluding a directed verdict for the defendant, and were
    entitled to an instruction on comparative negligence.

        1. Walker, as a business invitor, owed Renold Beals, Jr., as a
    business invitee, the duty of maintaining his premises in a

REFERENCES FOR POINTS IN HEADNOTES
[1, 4] 57 Am Jur 2d, Negligence §§ 1, 67, 68.
    62 Am Jur 2d, Premises Liability § 65.
[2, 4, 5, 7] 57 Am Jur 2d, Negligence §§ 6-9, 34, 37.
    62 Am Jur 2d, Premises Liability §§ 29, 65, 70, 71, 272, 273.
[3] 29 Am Jur 2d, Evidence § 891.
    30 Am Jur 2d, Evidence § 1003.
    57 Am Jur 2d, Negligence § 273.
    Admissibility in evidence, on issue of negligence, of codes or stan-
        dards of safety issued or sponsored by governmental body or by
        voluntary association. 58 ALR3d 148.
[4] Am Jur 2d New Topic Service, Comparative Negligence § 25.
[6] Am Jur 2d New Topic Service, Comparative Negligence §§ 10, 11.
[7] 57 Am Jur 2d, Negligence § 144.
    62 Am Jur 2d, Premises Liability § 67.

reasonably safe condition and of exercising due care to prevent and to obviate the existence of a situation known to him or that should have been known which might result in injury. The reasonableness of the defendant's failure to warn Mr. Beals of the icy condition of the roof from which Mr. Beals fell was a matter for the jury.

2. The plaintiffs offered evidence which tended to show violations of Department of Labor safety regulations and a violation of a custom of the industry of providing an interior, rather than an exterior, ladder in the grain elevator. Violations of administrative rules and regulations are evidence of negligence. Safety regulations in the workplace apply to employees of independent contractors. Before a regulation is admitted, the trial judge must consider whether the harm suffered was what the regulation was designed to prevent. Violation of a custom of the industry was properly submitted to the jury.

3. The doctrine of comparative negligence was adopted during the pendency of the plaintiffs' appeal and applies to this case. Because the plaintiffs submitted evidence at trial sufficient to avoid the defendant's motion for a directed verdict, they are entitled to a new trial under the principles of comparative negligence. The decision of the Supreme Court which abolished the defense of contributory negligence in a case by a construction worker against a general contractor for failure to provide adequate safety devices need not be extended to the facts of this case because that decision was overruled upon the adoption of comparative negligence.

Justice Levin, joined by Justice Kavanagh, concurred, but disagreed with the discussion of contributory negligence as a defense. The introduction of evidence tending to establish the plaintiff's fault does not require the assessment of some amount of comparative fault against the plaintiff. It is ultimately for the jury to determine whether to credit the evidence of plaintiff's fault and to determine whether, if it finds that the plaintiff was at fault, plaintiff's fault was a cause in fact of plaintiff's injury.

Where the plaintiff alleges and evidentially supports his claim that the failure to provide a safety device or an adequate safety device was a cause in fact of his injury, the jury should be instructed that if it finds that the defendant failed to provide a safety device or an adequate device in violation of a statutory or common-law duty, then, if that failure was *the* cause in fact of plaintiff's injury, the amount of any damages assessed should not be reduced because of the asserted negligence of the plaintiff—in such a case, fault of the plaintiff was

not a contributory cause; that if it finds that the asserted failure to provide a safety device or an adequate safety device was not *a* cause in fact of plaintiff's injury, no damages should be awarded—in such a case, fault of the defendant was not a contributing cause; and that if it finds that both the plaintiff's fault and the defendant's failure to provide a safety device or an adequate safety device contributed to plaintiff's injury, then it should determine the comparative fault of both the plaintiff and the defendant and assess damages accordingly.

Reversed and remanded for a new trial.

98 Mich App 214; 296 NW2d 828 (1980) reversed.

OPINION OF THE COURT

1. NEGLIGENCE — BUSINESS INVITORS — DUTY OF CARE.

A business invitor owes business invitees the duty of maintaining his premises in a reasonably safe condition and of exercising due care to prevent and to obviate the existence of situations which might result in injury of which he knows or should know.

2. NEGLIGENCE — BUSINESS INVITORS — DUTY TO WARN — QUESTION OF FACT.

The reasonableness of the conduct of the owner of a building in failing to warn a business invitee, who had climbed onto a roof of the building to gain access to machinery he was going to repair, of ice on the roof, even though it might have been obvious because of the temperature, climate, and time of year, was a matter for the jury.

3. NEGLIGENCE — SAFETY REGULATIONS — VIOLATIONS — ADMISSIBILITY.

Safety regulations in the workplace apply to employees of independent contractors, and violation of them by the owner of the workplace is evidence of negligence; before evidence of a violation of an administrative rule or regulation is admitted, however, the trial court must consider whether the harm suffered was what the regulation was designed to prevent.

4. NEGLIGENCE — COMPARATIVE NEGLIGENCE — RETROACTIVE EFFECT.

The doctrine of comparative negligence applies to an action in negligence by an employee of an independent contractor against a business invitor for failure to maintain his premises in a reasonably safe condition or to warn of dangerous conditions, even though the doctrine was adopted during the pendency of the plaintiff's appeal, requiring remand for a new trial under the principles of comparative negligence.

5. NEGLIGENCE — BUSINESS INVITORS — INDUSTRY CUSTOMS — QUESTIONS OF FACT.

Whether a business invitor violated a custom of the industry of providing an interior rather than an exterior ladder for access to hoisting machinery near the top of a grain elevator was a question of fact in an action by a business invitee for injuries incurred when he slipped on an icy roof while trying to reach an exterior ladder.

CONCURRING OPINION BY LEVIN, J.

6. NEGLIGENCE — COMPARATIVE FAULT — JURY INSTRUCTIONS.

*The jury in a negligence action, upon introduction of evidence tending to establish the plaintiff's fault, must determine whether the plaintiff was at fault in causing the injury; where it finds that the plaintiff was not at fault or that any fault of the plaintiff was not a cause in fact of his injury, it should not reduce the amount of its award by the amount of the plaintiff's fault; where it finds that the plaintiff's fault was the cause in fact of the injury, no damages should be awarded; and where it finds that both the plaintiff and the defendant were at fault, it should determine the comparative fault of each and assess damages accordingly.*

7. NEGLIGENCE — SAFETY DEVICES — FAILURE TO PROVIDE — CAUSATION — QUESTION OF FACT.

*Whether a defendant business invitor, in violation of a statutory or common-law duty, failed to provide a safety device or an adequate safety device and whether such a failure was the cause in fact or a contributory cause of a plaintiff business invitee's injury are for the trier of fact to decide.*

*Cicinelli, Mossner, Majoros & Alexander, P.C.* (by *Eugene D. Mossner* and *William S. Pearson*), for the plaintiffs.

*Isackson, Neering & Quinn, P.C.* (by *Frank M. Quinn*), for the defendant.

RYAN, J. This is a slip and fall case which raises issues under the law of premises liability.

We are required to decide whether the plaintiff was entitled to the requested instruction on com-

parative negligence; whether the *Funk*[1] doctrine should be expanded to cover the facts of this case; and whether the Court of Appeals erred in finding that the trial court should have granted the defendant's motion for a directed verdict. We answer the first and third questions in the affirmative, but answer the second question in the negative. Accordingly, the decision of the Court of Appeals is reversed and the case is remanded for a new trial under the principles of comparative negligence.[2]

On January 18, 1974, plaintiff Renold L. Beals, Jr., fell from a roof of the Kingston Farm Service building in Kingston, Michigan, onto the railroad grade below and then forward onto the tracks, striking his left elbow and face against the railroad tracks. He suffered a cut lip, a broken tooth, and an injury to his right foot which was later diagnosed as a multiple fracture of the right heel bone. The plaintiff and his spouse, Joyce E. Beals, filed suit on February 19, 1975, against the defendant, Richard Walker, the owner and operator of Kingston Farm Service. Amended complaints were later filed, alleging medical malpractice by defendant Dr. John Williamson in the treatment of the plaintiff's injured foot.

The trial began on June 6, 1978. At the close of the plaintiff's proofs, defendant Walker filed a motion for a directed verdict of dismissal. The trial judge took the motion under advisement. At the close of the case, the court refused to give the plaintiff's requested charge on comparative negligence and instructed the jury that plaintiff's con-

---

[1] *Funk v General Motors Corp,* 392 Mich 91; 220 NW2d 641 (1974).

[2] The plaintiff claims that he was denied a fair trial by the admission of a complete written statement by defendant Walker and by a jury instruction that injected a false issue into the case. These issues were not reached by the Court of Appeals, are not necessary to our decision today, and need not arise upon retrial. Accordingly, we decline to address them.

tributory negligence would bar recovery. Plaintiff objected to that instruction on the basis of *Funk v General Motors Corp,* 392 Mich 91; 220 NW2d 641 (1974). A jury verdict of no cause of action was returned in favor of both defendants on June 17, 1978. The plaintiff's motion for a new trial was denied on October 6, 1978.

A timely claim of appeal as of right was filed in the Court of Appeals on October 26, 1978. Defendant Walker filed a cross-appeal, arguing that his motion for a directed verdict should have been granted. A majority of the Court of Appeals panel affirmed the judgment for defendant Walker on the basis of the issues raised in the cross-appeal, namely that certain safety regulations issued by the Michigan Department of Labor were not violated and therefore the motion for a directed verdict should have been granted. The judgment in favor of defendant Williamson was also affirmed. *Beals v Walker,* 98 Mich App 214; 296 NW2d 828 (1980). Judge M. J. KELLY dissented only as to defendant Walker, finding sufficient evidence to allow the premises liability claim to go to a jury.

The plaintiff applied for leave to appeal against only defendant Walker. We granted leave to appeal. 411 Mich 900 (1981).

The evidence adduced during the plaintiff's case in chief tended to show the following facts:

The plaintiff had been employed as a millwright for ten years prior to the accident.

The morning of January 18, 1974, was cold and misty, the type of day that required the use of windshield wipers when driving an automobile. Sometimes the sun would come out and then disappear again. The plaintiff and a fellow employee, John Wilson, arrived at the defendant's grain elevator in response to Walker's call for

repair service. An elevator leg would not operate, and Walker suspected that the problem was a broken "reducer", a large gear located in the "headhouse" at the very top of the elevator.

The "man-lift" used to reach the top of the elevator was capable of carrying only one person; the lift could not be sent down in order to carry up a second person because it was counterbalanced for the weight of one person. Since the repair required the attention of both of the men, it was necessary that another means be found to enable *both* Beals and Wilson to reach the headhouse.

The plaintiff initially looked for an inside ladder adjacent to the lift. The plaintiff and John Wilson testified that every other grain elevator they had ever worked on had an inside ladder. The plaintiff's safety expert also testified that this was the only grain elevator he had ever seen without an inside ladder. The plaintiff's employer provided a list of grain elevators he had worked on, all having inside ladders. Finding no inside ladder, the plaintiff asked one of the defendant's employees how a second man could get to the headhouse. The employee said that a stationary outside ladder, which was permanently affixed to the outside of the elevator and extended from the roof of a lower building to the top of the elevator, could be used.[3] The employee informed the plaintiff that a portable ladder which was in the warehouse could be used to gain access to the roof of the lower building in order to reach the base of the outside ladder.

The plaintiff obtained the portable ladder from the warehouse and placed it against the side of the building in order to obtain access to the roof of the

---

[3] Plaintiff's exhibit No. 13 (next page) illustrates the situation.

Exhibit No. 13

lower building. Mr. Beals climbed the ladder, and
when he reached the top looked at the roof for
snow and ice and felt it for ice and wetness. The
roof was dry, so he climbed up on the east side of
the sloped roof and walked toward the stationary
ladder, which was located on the other side of the
roof a few feet past the peak. Before stepping over
the peak, the plaintiff looked at the surface of the
roof on the west side of the peak and determined
that it looked just like the east side. As Beals
stepped over the peak, he slipped, fell, and started
sliding down the roof. The west side of the roof
was coated with a sheet of clear ice. He slid off the
roof, sustaining serious injuries when he struck
the ground. A second worker traveled the same
route later that same day and successfully reached
the headhouse without incident.

The plaintiff's safety expert testified that the
route from the ground to the headhouse via the
outside ladder was unsafe in several ways. Al-
though the slope of the roof was not severe, about
18 degrees, it was hazardous for a person walking
upon it when compared to a maximum recom-
mended pitch of less than 12 degrees. The expert
testified that, in his opinion, the safe access ramp
and platform required by the applicable safety
regulations could have been constructed at total
materials and labor cost of less than $500.

I

The plaintiff's initial assignment of error con-
cerns the trial court's instructions on contributory
negligence as a total bar to recovery and the
court's concomitant refusal to instruct under the
doctrine of comparative negligence. This Court
adopted the doctrine of comparative negligence in

*Placek v Sterling Heights,* 405 Mich 638; 275 NW2d 511 (1979).

The defendant does not contest the fact that the issue was properly preserved and that this case falls within the limited rule of retroactivity announced in *Placek,* p 667, namely,

"any case presently pending on appeal in which application of the doctrine was requested at the trial court and the issue preserved for appeal."

We are constrained to apply the rule of retroactivity adopted by a majority in *Placek,* despite the view of some of the justices that prospective application of comparative negligence would have been preferable. *Placek,* p 683 (opinion by COLEMAN, C.J., *concurring in part and dissenting in part).* If the plaintiff submitted evidence at trial sufficient to avoid the defendant's motion for a directed verdict, see part III, then the plaintiff is entitled to a new trial under the principles of comparative negligence.

## II

The plaintiff also objected to the trial court's contributory negligence instructions on the ground that the defense of contributory negligence was unavailable under our decision in *Funk v General Motors Corp,* 392 Mich 91; 220 NW2d 641 (1974). Despite the fact that this case does not involve a construction worker alleging negligence against the general contractor in the failure to provide adequate safety devices on the job, the plaintiff argued that the *Funk* decision could be extended to cover the facts of this case. While the *Funk* rationale could have been extended to completely

abolish the defense of contributory negligence,[4] it is clear that the *Funk* doctrine was based in large part upon the special safety considerations in the construction trades[5] and the unique role of the general contractor as a supervisor of common work areas.[6] In *Tulkku v Mackworth Rees Division of Avis Industries, Inc,* 406 Mich 615; 281 NW2d 291 (1979), the Court assumed, without deciding, that *Funk* applied to the workplace in general. In addition, it is clear that the *Tulkku* decision is supportable without reference to *Funk.*[7]

In any event, we deem it unnecessary to ascertain the precise contours of the *Funk* doctrine, since the *Funk* doctrine has been overruled in light of the adoption of comparative negligence. *Hardy v Monsanto Enviro-Chem Systems, Inc,* 414 Mich 29; 323 NW2d 270 (1982). The plaintiff's assertions on appeal that *Funk* survived the adoption of comparative negligence in *Placek* were decided adversely to the plaintiff in *Hardy* and need not be reconsidered. Even if we extended the *Funk* doctrine to the facts of this case, the defense of comparative negligence would be available upon retrial. Thus, the trial court's refusal to apply *Funk* to this case was not erroneous and does not justify a new trial.

### III

The majority of the Court of Appeals held that the trial court erred in denying the defendant's

---

[4] *Hardy v Monsanto Enviro-Chem Systems, Inc,* 414 Mich 29, 38, fn 3; 323 NW2d 270 (1982).

[5] *Hardy,* fn 4 *supra,* p 71, fn 45 (opinion by MOODY, J., *dissenting in part).*

[6] *Hardy,* fn 4 *supra,* pp 63-65, 69, fn 41.

[7] *Hardy,* fn 4 *supra,* pp 42-43.

motion for a directed verdict. If the plaintiff failed to present evidence sufficient to establish a prima facie case of negligence, then the defendant was entitled to judgment as a matter of law, and the refusal to give the requested comparative negligence instructions would be merely harmless error. In evaluating a motion for a directed verdict, the evidence must be viewed in a light most favorable to the non-moving party. *Caldwell v Fox,* 394 Mich 401, 407; 231 NW2d 46 (1975). Viewed in this light, the trial court correctly refused to grant the motion for a directed verdict, and the Court of Appeals majority was in error in concluding that there was insufficient evidence to take the plaintiff's case to the jury.

The defendant, as a business invitor, owed the plaintiff, as a business invitee, the duty

"of maintaining its premises in a reasonably safe condition and of exercising due care to prevent and to obviate the existence of a situation, known to it or that should have been known, that might result in injury." *Torma v Montgomery Ward & Co,* 336 Mich 468, 476; 58 NW2d 149 (1953).

The Court of Appeals majority reasoned that "to the extent that the icy condition was obvious, due to the temperature, climate, and time of year, defendant cannot be held to have a duty to warn plaintiff of such a condition". *Beals,* p 226. This conclusion is directly contrary to this Court's decision in *Quinlivan v Great Atlantic & Pacific Tea Co, Inc,* 395 Mich 244; 235 NW2d 732 (1975).[8] Of

[8] "For reasons adequately stated by the Alaska Court, we reject the prominently cited notion that ice and snow hazards are obvious to all and therefore may not give rise to liability. While the invitor is not an absolute insurer of the safety of the invitee, the invitor has a duty to exercise reasonable care to diminish the hazards of ice and snow

course, a roof is not a parking lot, but the reasonableness of the defendant's conduct under these circumstances is a matter for the jury, not the Court of Appeals.

Further support for the plaintiff's case was provided by evidence tending to show the violation of two safety regulations issued by the Michigan Department of Labor. Violations of administrative rules and regulations are evidence of negligence. *Douglas v Edgewater Park Co,* 369 Mich 320, 328; 119 NW2d 567 (1963); see also *Zeni v Anderson,* 397 Mich 117, 142; 243 NW2d 270 (1976). The defendant argues that safety regulations in the workplace do not apply to employees of independent contractors; we reject that argument on the authority of *Hardaway v Consolidated Paper Co,* 366 Mich 190, 197; 114 NW2d 236 (1962).

The Court of Appeals majority found that the alleged violation of safety regulations was irrelevant and should not have been admitted. We disagree. As to the regulations requiring the use of guardrails and barriers on "runways", there was evidence sufficient to support the inference that the roof was used as a "passageway for persons elevated above the surrounding floor or ground level". Of course, should the jury conclude that the roof was so rarely used that it was not a "passage-

accumulation. * * * The conduct of the invitee will often be relevant in the context of contributory negligence." *Quinlivan,* pp 260-261.

"'The mere fact that snow and ice conditions prevail for many months throughout various locations in Alaska is not in and of itself sufficient rationale for the insulation of the possessor of land from liability to his business invitee. Nor do such climatic conditions negate the possibility that the possessor should have anticipated harm to the business invitee despite the latter's personal knowledge of the dangerous snow and ice conditions or the general obviousness of such conditions.

"'What acts will constitute reasonable care on the part of the possessor of land will depend on the particular variables of each case.'" *Quinlivan,* p 260, quoting *Kremer v Carr's Food Center, Inc,* 462 P2d 747 (Alas, 1969).

way", or "runway", then it will properly conclude that the regulation was not violated. A similar factual dispute exists regarding the regulation requiring a platform at the base of a ladder ascending over 20 feet. Whether or not the platform would have prevented the plaintiff's fall or provided a means by which the plaintiff could have stopped his fall is a question of fact for the jury, since it appears that while the plaintiff never actually reached the ladder, he may have slipped down the angled roof over the area on which a horizontal platform should have been constructed. However, before the regulation is admitted upon retrial, the trial judge must carefully consider whether the harm suffered was what the regulation was designed to prevent. *Zeni, supra,* p 138.

Finally, the plaintiff introduced evidence sufficient to create a factual question whether the defendant violated the industry custom of providing an interior rather than an exterior ladder. Our review of the record convinces us that the trial judge correctly submitted this issue to the jury as well.

The trial judge correctly denied the defendant's motion for a directed verdict. The Court of Appeals majority erroneously concluded that a directed verdict should have been granted. The decision of the Court of Appeals is reversed, and the case is remanded for a new trial.

FITZGERALD, C.J., and COLEMAN, J., concurred with RYAN, J.

WILLIAMS, J., concurred in the result.

LEVIN, J. We concur in the majority opinion except for part II which speaks of the *"Funk* rationale" and the *"Funk* doctrine" *(Funk v Gen-*

*eral Motors Corp,* 392 Mich 91; 220 NW2d 641 [1974]), and to whether it should be "extended".

The majority opinion does not describe the *"Funk* rationale" or the *"Funk* doctrine". In *Hardy v Monsanto Enviro-Chem Systems, Inc,* 414 Mich 29, 38-39; 323 NW2d 270 (1982), the opinion of the Court states that "the precise limits of this Court's opinion in *Funk, supra,* are unclear", but that "[u]nder *Funk,* the defense of contributory negligence is unavailable when a construction worker alleges negligence in the failure to provide adequate safety devices on the job", and that "[i]n *Funk,* this Court found the total bar of contributory negligence to be inconsistent with the public policy of promoting safety in the workplace".[1]

*Funk* did not, however, declare that the defense of contributory negligence is unavailable merely because the plaintiff *"alleges* negligence in the failure to provide adequate safety devices on the job". (Emphasis supplied.) Nor did this Court in *Funk* in adverting to and quoting from the opinion

[1] In *Tulkku v Mackworth Rees Division of Avis Industries, Inc,* 406 Mich 615, 619; 281 NW2d 291 (1979), the plaintiff's hand was severely injured when a safety device malfunctioned. The trial court refused to instruct the jury that contributory negligence is not a defense "where the defendants have failed to provide a proper, adequate and suitable safety device" and "[y]ou may not consider contributory negligence if you find that there was such a failure on the part of the defendants to provide a proper, adequate and suitable safety device and that such failure was *a proximate cause* of the plaintiff's injuries". (Emphasis supplied.)

This Court's decision in *Tulkku* went further than *Funk* and even beyond the requested instruction. It did not merely state that if the trier finds that there was a breach by the defendant and such failure was "the cause in fact" *(Funk)* or "a proximate cause" (the requested instruction in *Tulkku)* of plaintiff's injury contributory negligence was not a defense, it declared that "contributory negligence is no bar to recovery *where evidence has been presented* of defendant's causal negligence in the design or manufacture of a safety device". *Tulkku,* p 623. See also *Tulkku v Mackworth Rees Division of Avis Industries, Inc (On Remand),* 101 Mich App 709; 301 NW2d 46 (1980), *lv den* 411 Mich 897 (1981).

of the New York Court of Appeals in *Koenig v Patrick Construction Corp,* 298 NY 313, 318-319; 83 NE2d 133 (1948), adopt every statement and reason advanced by that Court in support of its decision in that case.

In *Funk,* pp 113-114, in stating the question, we said "we have considered whether the defense of contributory negligence bars recovery *where the trier of fact may reasonably find* that the failure to provide necessary safety equipment was *the* cause in fact of the injury". (Emphasis supplied.) We concluded that there was no reason why the concept that the defense of ordinary contributory negligence is "inapposite to a claim predicated on a breach of a legislatively-imposed safety regulation", declared in *Koenig* and other cases, "should not govern *if* the trier of fact finds that the employer-defendant's breach of a common-law duty to provide safety equipment is *the* cause in fact of plaintiff's injury". (Emphasis supplied.)

Thus, *Funk* did not hold that the defense of contributory negligence could not be interposed merely because the worker "alleges negligence in the failure to provide adequate safety devices". As stated in *Funk,* the defense of contributory negligence is not available (i) "where the trier of fact may reasonably find that the failure to provide necessary safety equipment was the cause in fact of the injury", and (ii) "if the trier of fact finds that the employer-defendant's breach of a common-law duty to provide safety equipment is the cause in fact of plaintiff's injury".

In *Hardy v Monsanto, supra,* p 40, this Court said that "it would be 'anomalous' to hold a defendant liable for damages in excess of the amount causally related to his negligence". That was indeed precisely the point that was made in *Funk.*

Neither the plaintiff nor the defendant should suffer or be held responsible for loss in "excess of the amount causally related to his negligence". As stated in *Funk,* "if the trier of fact finds" that the defendant's breach "is *the* cause in fact of plaintiff's injury" (emphasis supplied), then any negligence of the plaintiff is not a contributory cause of his loss. If, however, the trier of fact finds that the defendant's breach was not a "cause in fact of plaintiff's injury", plaintiff cannot recover at all. And if the trier of fact finds that "the cause in fact of plaintiff's injury" is both the negligence of the plaintiff and the negligence of the defendant, then the jury should determine the comparative fault, and the defendant should not be held liable for damages in "excess of the amount causally related to his negligence".

In *Hardy,* this Court did not say that where there is evidence of the plaintiff's negligence, the jury *must* apportion some amount in respect to the plaintiff's comparative fault. *Hardy* said rather "that negligence in the failure to provide an 'adequate safety device' in the workplace is therefore *subject to* the comparative negligence defense, assuming that any evidence of the plaintiff's negligence exists". (Emphasis supplied.)

The introduction of evidence tending to establish plaintiff's fault does not require the assessment of some amount of comparative fault against the plaintiff. While the plaintiff's claim is "subject to the comparative negligence defense", it is ultimately for the jury to determine whether to credit the evidence of plaintiff's fault and to determine whether, *if* it finds that the plaintiff was at fault, plaintiff's fault was a cause in fact of plaintiff's injury. If the jury rejects the evidence tending to show that the plaintiff was at fault or determines

that any fault of the plaintiff was not a cause in fact of his injury, it should not reduce the damage award in respect to plaintiff's fault which was not in the jury's view evidentially substantiated or a contributory cause of his injury. On the other hand, if the jury finds that plaintiff's fault was the cause in fact of his injury, then no damages should be awarded because then fault of the defendant was not a cause in fact of plaintiff's injury. And if the jury finds that the fault of both the plaintiff and the defendant was a contributory cause, then, because plaintiff's claim is "subject to the comparative negligence defense", it should determine the comparative fault of both the plaintiff and the defendant.

As set forth in *Funk, supra,* p 113, "[t]he question of contributory negligence is generally one of fact, not of law". It is for the trier of fact to decide whether the defendant, in violation of a statutory or common-law duty, failed to provide a safety device or an adequate safety device and whether such a failure was the cause in fact or a contributory cause of plaintiff's injury.

Where the plaintiff alleges and evidentially supports his claim that the failure to provide a safety device or an adequate safety device was a cause in fact of his injury, the jury should be instructed that if it finds that the defendant failed to provide a safety device or an adequate device in violation of a statutory or common-law duty, then if that failure was *the* cause in fact of plaintiff's injury, the amount of any damages assessed should not be reduced on account of asserted fault of the plaintiff—in such a case, fault of the plaintiff was not a contributory cause; that if it finds that the asserted failure to provide a safety device or an adequate safety device was not *a* cause in fact of

plaintiff's injury, no damages should be awarded—in such a case, fault of the defendant was not a contributing cause; and that if it finds that both the plaintiff's fault and the defendant's failure to provide a safety device or an adequate safety device contributed to plaintiff's injury, then it should determine the comparative fault of both the plaintiff and the defendant and assess damages accordingly.

KAVANAGH, J., concurred with LEVIN, J.

RILEY, J., took no part in the decision of this case.