## KINGSTON v MARKWARD & KARAFILIS, INC

Docket Nos. 59944, 62538. Submitted October 6, 1983, at Detroit.— Decided April 30, 1984. Leave to appeal applied for.

Charles G. Kingston, an employee of Chrysler Corporation, was assisting another employee in replacing metal plate covers on top of an oil reservoir when he slipped, fell into the reservoir of oil, and died. Charles W. Kingston, administrator of the estate of Charles G. Kingston, deceased, brought an action against Markward & Karafilis, Inc., the construction company which, as general contractor, had built that part of the building on which the decedent was working when he died, W.J.C. Kaufmann Construction Co., manufacturer of the metal plate covers which the decedent was replacing when he died, and John G. Hoad & Associates, the architectural firm associated with the construction of the building on which the decedent was working when he died, in Wayne Circuit Court. John G. Hoad & Associates was dismissed from the case upon the granting of their motion for accelerated judgment based upon a special statute of limitations. Markward and W.J.C. Kaufmann filed third-party complaints for common-law indemnity against Chrysler Corporation. Markward also cross-claimed for indemnity against W.J.C. Kaufmann on the basis of an assignment of the construction contract by Chrysler to W.J.C. Kaufmann. Chrysler claimed, as a defense to the third-party complaint against it, that it had a right to indemnity under its contract with W.J.C. Kaufmann. At trial, upon the close of proofs, Markward moved for a conditional directed verdict on its cross-claim against W.J.C. Kaufmann to the effect that, if the jury found active negligence by Markward or W.J.C. Kaufmann or found that Markward was liable for failing to point out W.J.C. Kaufmann's negligence, Markward would be totally indemnified by W.J.C. Kaufmann. The motion was denied, Henry J. Szymanski, J. However, the court later instructed the jury that Markward was entitled to a verdict in its favor on the cross-claim for indemnity under the language of a purchase order if

REFERENCES FOR POINTS IN HEADNOTES

[1] 6 Am Jur 2d, Assignments § 9 et seq.
[2] Am Jur 2d New Topic Service, Comparative Negligence § 29.

the jury found that W.J.C. Kaufmann was negligent and its negligence was the full proximate cause of the death of Charles G. Kingston or that both Markward and W.J.C. Kaufmann were negligent and that negligence was a proximate cause of the decedent's death. W.J.C. Kaufmann noted its objections to the charge. The jury returned a verdict in the amount of $3,000,000 in favor of the plaintiff jointly against Markward and W.J.C. Kaufmann. On the cross-claim by Markward against W.J.C. Kaufmann the jury awarded total indemnity in favor of Markward. Markward and W.J.C. Kaufmann were found to have no cause of action against Chrysler. W.J.C. Kaufmann filed a motion for a new trial or *remittitur* and a motion for judgment notwithstanding the verdict in favor of Markward on the indemnity claim. Thereafter, W.J.C. Kaufmann and Charles W. Kingston entered into a covenant not to enforce the judgment. The trial court subsequently denied W.J.C. Kaufmann's motion for judgment notwithstanding the verdict on the indemnity claim. W.J.C. Kaufmann appeals the order denying its motion for judgment notwithstanding the verdict on the indemnity claim. Markward also appeals, claiming that it should have been granted a directed verdict granting it indemnity. The appeals have been consolidated. *Held:*

1. W.J.C. Kaufmann owed no obligation of indemnity to Markward because the assignment of an indemnity clause by Chrysler to Markward was void because it created two indemnitees, Chrysler and Markward, and/or materially increased the risk that indemnification would be sought. The trial court's order denying W.J.C. Kaufmann's motion for judgment notwithstanding the verdict on the issue of indemnity is reversed.

2. The trial court did not err in denying Markward's motion for mistrial which was based on plaintiff's counsel's questioning of a Markward officer. The questions, despite the fact that they were irrelevant and should not have been introduced, were not so egregious as to result in a mistrial.

3. Markward's contention that it should have been allowed to raise the issue of the decedent's contributory negligence as a defense is rejected. There was no evidence of the decedent's negligence introduced.

4. The trial court's order denying W.J.C. Kaufmann's motion for judgment notwithstanding the verdict on the issue of indemnity is reversed and its ruling denying Markward's motion for directed verdict on the issue of indemnity is affirmed. W.J.C. Kaufmann's motion for judgment notwithstanding the verdict on the indemnity issue is granted and the jury verdict for plaintiff in the amount of $3,000,000 is affirmed, with

Markward and W.J.C. Kaufmann being jointly and severally liable for that award.

Reversed in part, affirmed in part.

1. CONTRACTS — ASSIGNMENT OF RIGHTS — CHANGE OR INCREASE IN BURDEN OF RISK.

A contractual right cannot be assigned where the substitution of a right of the assignee for the right of the assignor would materially change the duty of the obligor, or materially increase the burden or risk imposed on him by his contract, or materially impair his chance of obtaining return performance, or materially reduce its value to him.

2. NEGLIGENCE — SAFETY DEVICES — COMPARATIVE NEGLIGENCE.

The rule that a plaintiff's negligence could not provide a defense where the plaintiff's injury was proximately related to the defendant's failure to provide a proper safety device has been revised to allow a defense of comparative negligence to be raised, assuming that any evidence of the plaintiff's negligence exists.

*Dice, Sweeney, Sullivan & Feikens, P.C.* (by *Robert H. Feikens),* for Markward & Karafilis, Inc.

*Vandeveer, Garzia, Tonkin, Kerr & Heaphy, P.C.* (by *John M. Heaphy),* for Chrysler Corporation.

*Moore, Sills, Poling & Wooster, P.C.* (by *James M. Parahler),* for W.J.C. Kaufmann Construction Company.

Before: M. J. KELLY, P.J., and HOOD and SHEPHERD, JJ.

SHEPHERD, J. Following a jury trial, a verdict in plaintiff's favor in the amount of $3,000,000 was entered jointly against defendant cross-defendant appellant, W.J.C. Kaufmann Construction Co. (Kaufmann) and defendant cross-plaintiff appellee Markward & Karafilis, Inc. (Markward). The jury awarded total indemnity in favor of Markward.

Kaufmann now appeals as of right from the trial court's order denying its motion for judgment notwithstanding the verdict on the issue of indemnity. Markward also appeals, claiming that it should have been granted a directed verdict in favor of indemnity. The appeals have been consolidated by order of this Court. We find Kaufmann's claim to be meritorious since we find that Kaufmann owed no obligation of indemnity to Markward.

On December 11, 1976, plaintiff's decedent, Charles G. Kingston, who was employed by defendant Chrysler Corporation, was assisting another employee in replacing metal plate covers on top of an oil reservoir. The plate cover on which Kingston was standing slipped and he fell into the reservoir and died.

The reservoir and metal plate covers had been constructed in 1969 and 1970 when the plant at which Kingston worked was renovated. The metal plates were constructed by Kaufmann pursuant to an agreement with Chrysler that was embodied in a purchase order and related documents dated February 27, 1969. By reference in the purchase agreement, the parties' contract was to be governed by Chrysler's General Conditions, apparently standard conditions included by Chrysler in its contracts. Included in the General Conditions was a clause indemnifying Chrysler against property damage and personal injury related to the contractor's (Kaufmann's) work.

On March 19, 1969, Chrysler and Markward entered into an agreement for the construction of an addition to the same building. That purchase letter was issued on April 17, 1969. The metal plates constructed by Kaufmann were considered a substructure of the building; the addition con-

structed by Markward was labeled a superstructure which was added to the building.

On April 3, 1969, Chrysler Corporation sent Kaufmann a letter, informing Kaufmann that its contract was "assigned" to Markward. The letter also said:

"We will be issuing a Purchase Order Change shortly officially effecting this assignment. At that time the above noted contractor will assume the responsibility for overall administration and coordination, but Chrysler will continue to make direct payments to you under the terms of our present contract."

Kaufmann acknowledged the letter on April 8, 1969:

"This will acknowledge receipt of your letter of April 3, 1969, advising that our Purchase Order for the above subject work is being assigned to Markward & Karafilis, Inc.

"We have no objection to this assignment as long as our retention money is not held until completion of the Marward contract."

Kaufmann finished work on the reservoir plates in May, 1969. The purchase order change was issued on June 16, 1969, and said:

"ADD TO ORDER:
"The coordination and responsibility of this contract is now assigned to the General Contractor, Markward & Karafilis, Inc., with payment being made direct by Chrysler Corporation."

On July 7, 1969, Markward sent a letter to the architect associated with the renovation, John G. Hoad & Associates, advising Hoad that gratings (covers) on the oil reservoir tanks were not an-

chored and therefore posed a danger to property and people. Markward asked Hoad to inspect the gratings. Markward was not advised of any subsequent changes to be made, nor was Kaufmann ever informed by Markward of the slippage problem or of Markward's concern. Under the terms of Kaufmann's contract with Chrysler, construction of "stops" on the plates would have been considered extra and additional work, according to Hoad, since they were not included in the plans and specifications issued to Kaufmann.

In November, 1969, Hoad notified Chrysler by letter that Kaufmann had completed the substructure work in acceptable condition. Markward concurred and final payment was recommended. In January, 1970, construction meetings were held at which Chrysler, Hoad, and Markward, among others, were present, and at which the loose fit of the gratings was noted. Kaufmann was not represented at the meeting. Protective stops apparently were never added to the gratings.

Decedent's estate ultimately brought an action against Markward, which plaintiff claimed was the general contractor; Kaufmann, which plaintiff identified as a subcontractor; and Hoad Associates, the architect. Third-party complaints for common-law indemnity were filed against Chrysler by Markward and Kaufmann. Markward cross-claimed for indemnity against Kaufmann on the basis of the assignment of the contract by Chrysler. Chrysler tendered its defense to the third-party complaint to Kaufmann, claiming that it had a right to indemnity under its contract with Kaufmann.

At trial, upon the close of proofs, Markward moved for a "conditional" directed verdict on its cross-claim: if the jury found "active" negligence

by Markward or Kaufmann or found that Markward was liable for failing to point out Kaufmann's negligence, then Markward would be totally indemnified by Kaufmann. The trial judge denied the motion, stating:

"I don't think there is anything in the testimony or anything in the way the parties have described their conduct that indicates that the—that there was, indeed, intended to be the broad indemnification moving to Markward and Karafilis from Kaufmann that is referred to in the body of that indemnification paragraph."

However, the court eventually charged the jury:

"I charge you that the evidence indicates that Markward and Karafilis pursuant to the assignment of the purchase order in question had a contract with W.J.C. Kaufmann Construction Company and, therefore, W.J.C. Kaufmann Construction Company is bound by the applicable terms of said contract. The existence of the indemnity agreement in the contract language between Markward and Karafilis and W.J.C. Kaufmann Construction Company is undisputed. Because of this, I charge you that the indemnity agreement is presumed to be understood by both parties.

"You are instructed that the Markward and Karafilis Company is entitled to a verdict in its favor on the cross-claim for indemnity under the language of the purchase order under any one of the following circumstances:

"One. That the W.J.C. Kaufmann Construction Company was negligent and its negligence was the full proximate cause of the plaintiff's decedent's death, or:

"Number two. That both Markward and Karafilis and W.J.C. Kaufmann Construction Company were negligent and this negligence was a proximate cause of plaintiff's decedent's death."

Kaufmann noted its objections to the charge.

The jury returned a verdict in the amount of $3,000,000 in favor of plaintiff, jointly against Markward and Kaufmann. On the cross-claim, the jury awarded total indemnity in favor of Markward, the general contractor. Markward and Kaufmann were found to have no cause of action against Chrysler.

Kaufmann filed a motion for new trial or *remittitur* and a motion for judgment notwithstanding the verdict on the indemnity claim on March 20, 1981. On May 6, 1981, Kaufmann and plaintiff entered into a covenant not to enforce the judgment. Plaintiff received payment of $1,000,000 for the covenant. On August 10, 1981, the trial court denied Kaufmann's motion for judgment notwithstanding the verdict on the indemnity claim. The order was entered on August 31, 1981.

On appeal, the parties raise separate issues. Neither addresses the issues raised by the other. Since we find one issue raised by Kaufmann to be dispositive, we do not reach all issues raised by both parties.

Kaufmann argues that assignment of the indemnity clause was void because it created two indemnitees (in that Chrysler also attempted during the lawsuit to claim indemnity under the contract) and because substituting Markward as a party materially increased the risk that indemnification would be sought. Kaufmann raised this issue in its motion for judgment notwithstanding the verdict.

3 Restatement Contracts, 2d, § 317(2), p 15 provides:

"(2) A contractual right can be assigned unless

"(a) the substitution of a right of the assignee for the right of the assignor would materially change the duty of the obligor, or materially increase the burden or risk imposed on him by his contract, or materially impair

his chance of obtaining return performance, or materially reduce its value to him, or

"(b) the assignment is forbidden by statute or is otherwise inoperative on grounds of public policy, or

"(c) assignment is validly precluded by contract."

Comment (d) to § 317(2) of the Restatement provides that the definition of a "material increase" in the burden of risk imposed depends on the nature of the contract and on the circumstances.

The subject of assignment is also discussed in Corbin, Contracts:

"From what has preceded, it has been made to appear that a party to a contract cannot by any process called assignment change in any material way the performance to be rendered by the other party. He has power to substitute a new party as holder of the right; he has no power to change the performance that the right requires. In other sections, also, it has been made to appear that one cannot by assignment change the conditions on which the other party has promised to perform—the limiting facts the non-occurrence of which prevents duty of immediate performance. This is true whether the limiting conditions are prescribed in words or by implication or by construction of law. Special attention is here directed to the application of this rule to aleatory contracts.

"If the obligor's duty is aleatory in character—that is, if he has promised to perform only upon the happening of some event that is not certain to occur and that is not within the control of either party—the element that may be described as hazard, chance, or risk, is of special importance. And in such cases an assignment is defeated if the risk of the obligor is materially increased—that is, if the happening of the uncertain event is made more likely. The promisee cannot change the performance to be rendered; and also he must not, in the aleatory case, increase the risk that the performance will have to be rendered. An unjustified act

increasing this risk discharges the obligor's duty altogether.

"It is on this ground that a surety is discharged if the creditor discharges the principal debtor or grants him a binding extension of time to pay the debt. It is partly on this ground, also, that the holder of a fire insurance policy cannot effectively assign the policy rights to a purchaser of the insured property. The burning of that property is the uncertain event upon which the duty of the insurer depends. The risk of its occurrence must not be increased; and the transfer of the property may very considerably increase it." 4 Corbin, Contracts, § 868, pp 468-469 (1951).

It is clear that an assignment of the indemnity provision would significantly increase the risk to Kaufmann. The substance of the indemnity provision indicates that it was intended to protect the owner (identified as Chrysler) from claims for accident and injury. Kaufmann was protected from the greatest foreseeable risk with regard to Chrysler, however, by workers' compensation laws which would render Chrysler liable in workers' compensation benefits to its employees for injuries suffered on the job. With regard to those claims, Chrysler could not be sued in tort by an injured employee. If the right to indemnification were assigned to Markward, however, the risk to Kaufmann became significantly greater, since Chrysler's employees could sue Markward. Because the risk was significantly increased by the assignment, the assignment was void.

Furthermore, it was clear prior to and throughout litigation that Chrysler considered itself the proper beneficiary of the indemnity provision. Chrysler could not unilaterally create an obligation of indemnity for both itself and Markward by the assignment. Circumstances here would seem to indicate that Chrysler did not intend to assign the

indemnity provision; that instead, it intended to assign to Markward the supervision of and control over Kaufmann's project, not the entire contract between itself and Kaufmann. Chrysler also clearly retained the right to the work performed by Kaufmann and the duty to pay Kaufmann for work completed. The scope of the assignment was apparently very limited. See 3 Restatement Contracts, 2d, § 317(1), pp 14-15.

The indemnity promise was aleatory in nature. The obligation to provide indemnification was to arise only when the "owner" was subjected to a claim for injury or damage. By substituting Markward as the owner, the circumstances upon which the clause would be used were greatly increased— that is, with Chrysler as indemnitee, exposure to claims by employees for Chrysler's negligence was nil and by third persons very slim; with Markward as indemnitee, exposure encompassed almost every foreseeable situation.

This Court has expressly reserved judgment on the American Law Institute rule which states that the law will presume that an entire assignment of an executory, bilateral agreement will be interpreted as a delegation of the assignor's duties as well as an assignment of his rights, in the absence of circumstances showing a contrary intention. *Keyes v Scharer*, 14 Mich App 68; 165 NW2d 498 (1968). However, in this case the circumstances and documents indicate no intention of an entire assignment.

If both Chrysler and Markward claim indemnification under the contract, clearly the risk to Kaufmann was at least doubled and Chrysler's intent to assign becomes highly doubtful. If the indemnity clause was assigned to Markward, Kaufmann's risk was increased because of the greater

likelihood of tort suits by Chrysler employees. Either interpretation significantly increases the risk to Kaufmann and renders the alleged assignment of the indemnity clause void.

Because the remainder of the issues raised by Kaufmann also go to the validity of the assignment or to the operation of the indemnity clause itself, and since our holding that the assignment was void mandates reversal, we find it unnecessary to deal with the remainder of the issues raised by Kaufmann.

As we find any purported assignment of the indemnity clause to be void, Markward's claim that it was entitled to a directed verdict on the operation of the indemnity clause must obviously fail. The second issue raised by Markward is also without merit. While plaintiff's counsel's questioning of a Markward officer regarding his conception of moral duty was irrelevant and should not have been admitted, the questions were not so egregious as to result in a mistrial. The trial court, therefore, did not err in denying Markward's motion for mistrial.

Likewise, we are not persuaded by Markward's final claim of error that it should have been allowed to raise Kingston's contributory negligence as a defense. At the time this case was tried, a plaintiff's negligence could not provide a defense where the plaintiff's injury was proximately related to the defendant's failure to provide a proper safety devise. *Tulkku v Mackworth Rees Div of Avis Ind, Inc,* 406 Mich 615; 281 NW2d 291 (1979), *rev'd on other grounds on remand,* 101 Mich App 709; 301 NW2d 46 (1980), *lv den* 411 Mich 897 (1981). That rule has since been revised to allow a defense of comparative negligence to be raised, assuming that any evidence of the plaintiff's negli-

gence exists. *Beals v Walker,* 416 Mich 469, 479; 331 NW2d 700 (1982); *Hardy v Monsanto Enviro-Chem Systems, Inc,* 414 Mich 29; 323 NW2d 270 (1982); *Post v Textron, Inc,* 554 F Supp 419 (WD Mich, 1983).

We are unable to determine the basis for the trial court's refusal to permit Markward to raise a contributory negligence defense. Apparently all relevant discussions were held off the record. We point out that Markward's failure to provide this Court with a record of the trial court's findings, if available, or to request a special record for purposes of this Court's review, may be argued to constitute a waiver of the issue. See *People v Kelly,* 122 Mich App 427; 333 NW2d 68 (1983); *Dehring v Northern Michigan Exploration Co, Inc,* 104 Mich App 300; 304 NW2d 560 (1981). More importantly, however, there exists neither evidence nor inference on the record before us to indicate that plaintiff's decedent was negligent in the instant case. Even if the trial court's decision was based on the previous exclusionary rule, and even if we found that the new rule could properly be retroactively applied, the new rule only allows a comparative negligence defense to be raised where some evidence of the decedent's negligence actually exists. Since we find no such evidence here, we decline to reverse.

The trial court's order denying Kaufmann's motion for judgment notwithstanding the verdict on the indemnity claim is reversed and its ruling denying Markward's motion for directed verdict on the indemnity claim is affirmed. Kaufmann's motion for judgment notwithstanding the verdict on the indemnity issue is hereby granted. The jury verdict in favor of plaintiff in the amount of $3,000,000 is affirmed, with Markward and Kauf-

mann being jointly and severally liable for that award.

Reversed in part, affirmed in part.

Costs to Kaufmann.