# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

---

KEYBANK NATIONAL ASSOCIATION,

        Plaintiff,

v

LAKE VILLA OXFORD ASSOCIATES, LLC,
and KENNETH C. BURNHAM,

        Defendants-Appellees,

and

HOMESTEAD PROPERTIES, LP,

        Defendant-Appellant,

and

CHRISTOPHER INVESTMENT COMPANY,
INC., ROBB EVANS & ASSOCIATES,
OXFORD BANK CORP., MICHIGAN BELL
TELEPHONE CO., AT&T MICHIGAN,
CONSUMERS POWER CO., CONSUMERS
ENERGY CO., DETROIT EDISON CO., FANCH
CABLEVISION OF MICHIGAN, TW FRANCH
TWO CO., TW FRANCHTWO CO., CABLE
COMM, MCGLONE LEASING INVESTMENT
CO., MCGLONE LEASING INVESTMENT
COMPANY, INC., CC VIII OPERATING,
CHARTER COMMUNICATIONS, CHARTER
TOWNSHIP OF OXFORD, OAKLAND
COUNTY TREASURER, CAPITOL
INFRASTRUCTURE, CONNEXION
TECHNOLOGIES, and NEWBURY
MANAGEMENT SERVICES, LLC,

        Defendants.

UNPUBLISHED
September 15, 2016

No.   327469
Oakland Circuit Court
LC No.   2012-126588-CK

---

Before:  CAVANAGH, P.J., and SAAD and FORT HOOD, JJ.

-1-

PER CURIAM.

In this action for payment of a guaranty, defendant Homestead Properties, LP, appeals as of right an order denying its motion for summary disposition which was followed by a jury trial and a judgment in favor of defendants Lake Villa Oxford Associates, LLC, and Kenneth C. Burnham. We reverse and remand for proceedings consistent with this opinion.

This case was initiated by KeyBank National Association in response to Lake Villa Oxford and Burnham's failure to repay a loan for $30.05 million and mortgage regarding a 174-acre parcel in Oxford (the subject property). In KeyBank's action, numerous parties having an interest in the subject property were named, including Homestead and Christopher Investment, but only Homestead, Lake Villa Oxford, and Burnham remain parties to this action.

Burnham acted as manager of several related companies, including Lake Villa Oxford and Lake Villa Rochester. The subject property here was owned by Lake Villa Oxford but, as stated above, KeyBank held a mortgage on the property which secured a $30.05 million loan. That loan was also secured by a personal guaranty from Burnham. And when Christopher Investment loaned Lake Villa Rochester $4.45 million, the loan was secured by a second mortgage on the subject property and Burnham, again, personally guaranteed the loan.

Shortly after that agreement with Lake Villa Rochester, Christopher Investment assigned its rights under the loan, mortgage, and guaranty to Homestead. While this case progressed, Homestead notified Lake Villa Rochester and Burnham that they were in default under the loan and mortgage for failure to repay, and that it sought repayment by either Lake Villa Rochester under the loan, or from Burnham under the guaranty. Burnham responded by arguing that the guaranty was not assignable because it stated: "This Agreement shall be binding on and inure to the benefit of the parties and their respective successors and permitted assigns." Burnham argued that the guaranty was only assignable to parties that he had permitted, and that no such permission extended to Homestead. Homestead disagreed, arguing that the language did not create an anti-assignment clause but, even if it did, the assignment was still effective with regard to Homestead, and Burnham's sole grievance was with Christopher Investment for breaching the alleged anti-assignment clause.

Homestead moved for summary disposition on those grounds and the trial court denied the motion, holding that there was a question of fact for a jury regarding whether there was an anti-assignment clause. The case proceeded to trial. Homestead's witnesses testified that they did not believe Burnham's permission was required for assignment. Burnham testified that he intended the guaranty to be personal to Christopher Investment and to be only assignable when he permitted. And he did not permit Christopher Investment to assign the guaranty to Homestead.

The jury was then presented with a verdict form that did not include a question asking if the language of the guaranty created an anti-assignment clause. Rather, the verdict form contained the following question, to which Homestead objected: "IS HOMESTEAD AN INTENDED 'PERMITTED ASSIGNEE' OF THE PERSONAL GUARANTY OF KEN BURNHAM? ANSWER: _____ [YES OR NO]." The jury answered the question in the negative, finding that Homestead was not an "intended permitted assignee" of Burnham's

personal guaranty and, thus, held that Homestead did not have a cause of action against Burnham under the guaranty. The trial court later entered judgment on the jury verdict in favor of Burnham and Lake Villa Oxford.

Subsequently, Homestead moved for a judgment notwithstanding the verdict, arguing that the assignability of Burnham's guaranty was a purely legal issue that should not have been submitted to the jury. Further, as a matter of law, an anti-assignment clause was not created by the subject language—"permitted assigns"—but, even if it had been, Burnham's claim was to be asserted against Christopher Investment, not defensively against Homestead. Alternatively, Homestead requested a new trial, arguing that the above-quoted jury verdict form question was misleading because it included the word "intended," which was not part of the contract. It also assumed that an anti-assignment clause existed and that Burnham's permission was required instead of asking the jury whether an anti-assignment clause was created by the language of the contract. The trial court denied Homestead's motion and this appeal followed.

Homestead argues that the trial court erred when it denied its motion for summary disposition because an anti-assignment clause was not created by the language of the guaranty. We agree.

This Court reviews de novo a decision on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). In evaluating a motion brought under MCR 2.116(C)(10), the reviewing court must consider any affidavits, pleadings, depositions, admissions, or other evidence submitted by the parties in the light most favorable to the party opposing the motion. *Id*. at 120, citing MCR 2.116(G)(5). Summary disposition is proper where there is no "genuine issue regarding any material fact." *Id*. "Questions involving the proper interpretation of a contract or the legal effect of a contractual clause are also reviewed de novo." *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008).

"That contracts are enforced according to their terms is a corollary of the parties' liberty to contract." *Coates v Bastian Bros, Inc*, 276 Mich App 498, 503; 741 NW2d 539 (2007). The goal of contract interpretation, therefore, "is to determine the intent of the contracting parties." *Quality Prods & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 375; 666 NW2d 251 (2003). "Accordingly, we examine the language in the contract, giving it its ordinary and plain meaning if such would be apparent to a reader of the instrument." *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 47; 664 NW2d 776 (2003). In other words, this Court applies the plain meaning of the language in a contract unless the language of the contract is ambiguous. *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 353; 596 NW2d 190 (1999). "'A contract is said to be ambiguous when its words may reasonably be understood in different ways.'" *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 515; 773 NW2d 758 (2009), quoting *Raska v Farm Bureau Mut Ins Co of Mich*, 412 Mich 355, 362; 314 NW2d 440 (1982). "Courts may not impose an ambiguity on clear contract language." *Coates*, 276 Mich App at 503. "Whether a contract is ambiguous is a question of law." *Id*. at 504. "Only when contractual language is ambiguous does its meaning become a question of fact." *Id*.

Here, the contract language at issue is the alleged anti-assignment clause found in the guaranty. "Under general contract law, rights can be assigned unless the assignment is clearly restricted." *Burkhardt v Bailey*, 260 Mich App 636, 652; 680 NW2d 453 (2004), citing Calamari

& Perillo, Contracts (3d ed), § 18-10, p 735. This Court has previously cited 3 Restatement Contract, 2d, § 317(2), p 15, for the notion that contractual rights are assignable so long as the assignment is not "validly precluded by contract." *Kingston v Markward & Karafilis, Inc*, 134 Mich App 164, 171-172; 350 NW2d 842 (1984). Michigan courts "have striven to uphold freedom of assignability." *Detroit Greyhound Employees Fed Cred Union v Aetna Life Ins Co*, 381 Mich 683, 689; 167 NW2d 274 (1969) (internal citations and quotation omitted). Indeed, "those who would compose a contractual bar against alienation must use 'the plainest words.'" *Id*. (citations omitted).

Burnham argues, as he did in the trial court, that the contractual language—"[t]his Agreement shall be binding on and inure to the benefit of the parties and their respective successors and permitted assigns"—is enough to upset the right of alienability supported by Michigan law. We cannot agree. The clause at issue does not mention assignability and it contains no negative language regarding assignment. Further, nowhere in the contract does it state that assignment is prohibited absent consent and, moreover, the contract does not use negative language to describe assignability. In other words, there is no language like, for example, "this contract shall not be assigned" or "this contract is not assignable by Christopher Investment without the prior written consent of Kenneth C. Burnham." To the contrary, the clause at issue speaks positively about the possibility of assignments. Consistent with the general rule that contract rights are assignable, it states that the contract "shall be binding and inure to the benefit of the parties and their respective successors and permitted assigns." Plainly, that language considers and approves of the possibility of assignment.

In summary, considering the plain language of the contract, and the absence of strict language in "the plainest words" barring assignment, we conclude that the guaranty was assignable by law. See *id*.; see also *Wilkie*, 469 Mich at 47. As such, the trial court erred when it denied Homestead's motion for summary disposition. That decision is reversed and this matter is remanded to the trial court for determination of the amount of money owed under the guaranty.

Our resolution of this issue renders the remaining issues raised by Homestead in this appeal irrelevant, and we decline to consider them.[1]

---

[1] We note, however, that the jury verdict form contained reversible error because it assumed the issue the jury was required to answer. Instead of asking the jury to decide whether the language of the guaranty created an anti-assignment clause that required Burnham's permission, the jury was essentially told that such permission was required for assignment and then asked if it had been given. That question amounted to error affecting the outcome of the proceeding and would require reversal. See *Case v Consumers Power Co*, 463 Mich 1, 6; 615 NW2d 17 (2000).

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Henry William Saad
/s/ Karen M. Fort Hood