NEMETH v. THE DETROIT EDISON COMPANY

1. NEGLIGENCE—INDEPENDENT CONTRACTORS.
   An owner is not liable for injuries to an independent contractor or the employees of an independent contractor who came upon the premises at the instance of the owner or occupier of the premises to correct the precise condition which causes the injury.

2. NEGLIGENCE—INDEPENDENT CONTRACTORS.
   The owner of the premises was not liable to the employees of an independent roofing contractor who fell from defendant's roof and were injured when a tile upon which they were standing gave way, where the independent contractor had contracted to remove and replace defective tiles on the roof.

Appeal from Wayne, Horace W. Gilmore, J. Submitted Division 1 March 11, 1970, at Detroit. (Docket No. 6,475.) Decided September 28, 1970. Leave to appeal denied December 1, 1970. 384 Mich 785.

Complaint by Joseph Nemeth, Richard Zatkoff, and June Zatkoff against Detroit Edison Company for damages for injuries received when Joseph Nemeth and Richard Zatkoff fell from a roof. Directed verdict for defendant. Plaintiffs appeal. Affirmed.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 41 Am Jur 2d, Independent Contractors § 28.
Duty of owner of premises to furnish independent contractor or his employee a safe place of work, where contract is for repairs. 31 ALR2d 1375.

*Bellinson & Doctoroff* (*Ronald D. Feldman,* of counsel), for plaintiffs.

*Alexander, Buchanan & Conklin* (*Floyd S. Westcott,* of counsel), for defendant.

Before: T. M. BURNS, P. J., and HOLBROOK and BRONSON, JJ.

HOLBROOK, J.   This is an appeal by plaintiffs, Joseph Nemeth, Richard Zatkoff, and June Zatkoff, from a directed verdict at the close of plaintiffs' proofs in favor of defendant, The Detroit Edison Company.

Plaintiffs Joseph Nemeth and Richard Zatkoff were employees of Schreiber Corporation, an independent roofing contractor, who entered into a contract with defendant to make certain repairs to a roof of one of defendant's buildings.

The decking of the structural roof was constructed of federal tiles 2 by 8 feet.   The original repair specifications in the contract did not call for the replacement of any of these federal tiles.   However, part-way through the work, plaintiff Nemeth who was in charge of the job for Schreiber Corporation, observed that many of these tiles were cracked and otherwise deteriorated and recommended to a Mr. Montroy, who was representing defendant, that these tiles be removed and replaced.   Thereupon, a modification of the original contract was entered into by and between the parties as is evidenced from a part of plaintiff Nemeth's testimony, *viz*:

"*Q.* Who negotiated the time-materials bid for the replacement of certain of the federal tiles?

"*A.* That comes automatically with them.   They recommend it, and that is it.

"*Q.* Well, was it you that they negotiated with?

"*A.* Well, there is no negotiation. Montroy keeps the time, and at the end of the day I just sign my name to it, and they give me a slip, and that is it.

"*Q.* In other words, you agreed to go ahead with this on a time and material basis, is that right?

"*A.* Yes.

"*Q.* And you made that agreement with Montroy?

"*A.* Yes.

"*Q.* All right. And prior to your agreement with Montroy to replace these federal tiles on a time and materials basis, you had not yet replaced any of those particular federal tiles, right?

"*A.* No.

"*Q.* Did that commence the following day or the day he gave you the order?

"*A.* That come in afterwards. After I got the order.

"*Q.* Pardon?

"*A.* That come in after they gave me the okay to do it.

"*Q.* Well, at the time you were given this authority to go ahead on a time and material basis, had you completed the rollback of the asphalt and the tar paper?

"*A.* Yes. It was practically all complete.

"*Q.* So that would mean that shortly after you got the authority to go ahead, you went up there with Montroy and started putting "x's" on certain tiles, is that right?

"*A.* That's right.

"*Q.* Did you start removing the tiles immediately as they were "x'd"?

"*A.* Yes.

"*Q.* In other words, you would agree upon one that needed removal, and you would tell your workmen to go ahead and remove that tile?

"*A.* That's right.

"*Q.* And then you and Montroy would go ahead and move on to another spot and look at other tiles

and determine which ones needed replacement, and you would put an "x" on it, right?

"*A.* That's right.

"*Q.* And then you would tell your workmen, if they were through, to start to remove that one, right?

"*A.* That's right.

"*Q.* How many workmen did you have with you there, sir?

"*A.* I believe there were six at that time.

"*Q.* All of them journeymen except yourself?

"*A.* That's right."

It was during this work of removing and replacing the defective federal tiles that plaintiffs Nemeth and Zatkoff fell when one of the tiles upon which they were standing gave way. It is plaintiffs' claim that the federal tiles were safe to walk upon and the giving way of the one tile was caused by a different defect. However, plaintiffs' employer was required to inspect the roof both from on the roof and underneath the roof under the original agreement, and plaintiff Nemeth did the inspecting. Defendant, likewise, inspected the roof, and both these inspections did not disclose any structural defects.

As to whether the work being done by plaintiffs was dangerous work, plaintiff Nemeth testified in part:

"*Q.* Yes. And could you tell, when you were up there, where the beams were that supported the federal tile with the asphalt on top?

"*A.* Yes, you got an idea.

"*Q.* All right. And isn't it a safer practice to walk where the beams are than across where the actual tiles are which are resting on the beams?

"*A.* Well, actually, if you work at it long enough, you generally make a practice of walking where the beams are.

"*Q.* I see. And you have been working at that business for 17 years?

"*A.* Yes.

"*Q.* Is this what you warn your men to do, walk where the beams are?

"*A.* That's right.

"*Q.* As a matter of fact, if you had been standing on a beam, we wouldn't be here today, would we?

"*A.* That is probably right. If I had been standing on a beam."

Each tile weighed about 150 to 160 pounds and these, when removed, were placed on a wheelbarrow and the wheelbarrow was traversed over plywood, placed on the roof for that purpose, in order to discard the tile.

The general rule of law cited by the lower court when directing a verdict for the defendant and which is relied upon by both parties to this action is found in 31 ALR2d 1375, § 14, pp 1399, 1400:

"The owner of a building, who employed an independent contractor to replace a defective roof, was held, as a matter of law, not to be liable for the death of an employee of the contractor, who, while engaged in the repair work, stepped on an unremoved portion of the old roof that was not strong enough to bear his weight, and fell through, in *Broecker* v. *Armstrong Cork Co.* (1942), 128 NJL 3 (24 A2d 194). Recognizing that an employee of an independent contractor who enters the contractee's premises to perform the work is there by the latter's implied invitation, and that ordinarily an owner or occupier of lands, who, by invitation, express or implied, induces persons to come upon the premises, is under a duty to exercise ordinary care to render the premises reasonably safe for such purposes, the court pointed out that the rule is subject to exceptions, and that one of these exceptions is that the owner is not liable when an independent

contractor, or the employee of an independent contractor, comes upon the premises, at the instance of the owner or occupier, to correct the precise condition which causes the injury."

Plaintiffs concede the validity of this statement of the law but contend that it is not applicable to the instant case. They cite an exception to the general rule found in 31 ALR2d 1375, § 2, p 1384:

"On the other hand, where a risk separate and distinct from those created by the defects to be repaired under the contract resulted in the injury or death of a contractor or an employee of the latter, it has been held that a contractee cannot successfully invoke the defense of assumption of risk, and that the general rules (which are not the same in all jurisdictions) governing the extent of his duty to furnish an independent contractor and his employees a safe place of work and to warn them of hidden dangers are applicable."

Plaintiffs did not submit proofs showing there were any hidden defects that defendant knew of or that defendant should have with reasonable care discovered. The defendant was not an expert in the roofing field, and, in fact, it contracted with plaintiffs' employer because of that company's expertise in the field.

Plaintiffs rely on *Johnson* v. *Schilling Co.* (1959), 170 Cal App 2d 318 (339 P2d 139). In that case, plaintiff, a roofer, was injured when he tripped on a roof and fell through a previously cracked skylight. The California Court of Appeals reversed the directed verdict in favor of defendant, stating that the evidence disclosed that there was a defect in the roof unknown to plaintiff which caused him to lose his balance. However, this defect in the roof was observable from the interior of the building and the defendant, in the exercise of reasonable care,

should have discovered this defect and warned the plaintiff. That case is distinguishable on the facts from the instant case. In our case, neither plaintiffs nor their employer or the defendant had any knowledge of any defects hidden or otherwise, although all had made proper inspections.

Plaintiffs' employer's contract, as modified, called for the removal of the defective federal tiles. We agree with the trial judge that plaintiffs' injuries arose out of the performance of the contract and the exception to the safe place to work doctrine was properly applied.

Affirmed. Costs to defendant.

All concurred.