BUTLER v RAMCO-GERSHENSON, INC

Docket Nos. 149453, 149454. Submitted June 14, 1995, at Lansing. Decided December 15, 1995, at 9:00 A.M.

Joseph H. Butler and Constance M. Butler, for herself and as next friend of Jonathan C. Butler, brought an action in the Oakland Circuit Court against Ramco-Gershenson, Inc., Pontiac Mall Limited Partnership, Wineman Investment Company, and others, seeking damages for injury sustained by Joseph when pieces of coping fell on him while restoring a brick wall at the Summit Place Mall. At the time of the injury, Joseph was an employee of Western Waterproofing Company, Inc.; Pontiac Mall Limited Partnership and Wineman Investment Company owned the mall; Ramco-Gershenson, Inc., managed the mall; and Western Waterproofing was contractually obligated to Pontiac Mall to perform the brick restoration. The court, Robert C. Anderson, J., granted summary disposition for Ramco-Gershenson, Pontiac Mall, and Wineman Investment with respect to claims of inherently dangerous activity and premises liability. The plaintiffs filed two appeals, which were consolidated by the Court of Appeals.

The Court of Appeals *held:*

1. The inherently dangerous activity doctrine is an exception to the general rule that an employer of an independent contractor is not liable for the contractor's negligence or the negligence of the contractor's employees. Under the doctrine, an employer is liable for harm resulting from work necessarily involving danger to others unless great care is used to prevent injury. The employer is also liable where the work involves a peculiar risk or special danger that calls for special or reasonable precautions. The risk or danger must be recognizable in advance, however, in order to invoke the doctrine. Liability may not be imposed where a new risk is created in the performance of the work and was not reasonably contemplated at the time of the contracting. In this case, the likelihood of

REFERENCES

Am Jur 2d, Independent Contractors §§ 46, 52-59, 74.

Liability of employer with regard to inherently dangerous work for injuries to employees of independent contractor. 34 ALR4th 914.

falling pieces of coping was not contemplated at the time the contract for the brick restoration was made. Accordingly, the plaintiffs may not invoke the inherently dangerous activity doctrine and the trial court did not err in summarily dismissing the claim that was based on that doctrine.

2. An owner of premises has a duty to exercise reasonable care to protect invitees, including employees of independent contractors, from an unreasonable risk of harm caused by a dangerous condition on the premises that the owner knows or should know the invitees will not discover, realize, or protect themselves against. In this case, the plaintiffs stated a claim of premises liability with the assertions that the defendants failed to discover and warn of an unsafe condition involving the coping and that the defendants knew or should have known that such failure could result in injury. The trial court therefore erred in summarily dismissing the claim of premises liability in light of an unresolved question of fact concerning whether the defendants knew or should have known of the danger presented by the coping.

Affirmed in part and reversed in part.

1. NEGLIGENCE — EMPLOYERS OF INDEPENDENT CONTRACTORS — INHERENTLY DANGEROUS ACTIVITIES.

Liability should not be imposed on an employer of an independent contractor for harm resulting from work caused by the contractor's negligence or that of the contractor's employees where the work is not an inherently dangerous activity, but rather involves a new risk, created in the performance of the work, that was not reasonably contemplated at the time of the contract between the employer and the independent contractor.

2. NEGLIGENCE — EMPLOYERS OF INDEPENDENT CONTRACTORS — INHERENTLY DANGEROUS ACTIVITIES.

An employer of an independent contractor is liable for harm resulting from work necessarily involving danger to others unless great care is used to prevent injury and also where the work involves a peculiar risk or a special danger that calls for special or reasonable precautions; the risk or danger must be recognizable in advance, however, in order to invoke the inherently dangerous activity doctrine.

3. NEGLIGENCE — PREMISES LIABILITY — INVITEES — DANGEROUS CONDITIONS — DUTY TO WARN.

An owner of premises has a duty to exercise reasonable care to protect invitees, including employees of independent contractors, from an unreasonable risk of harm caused by a dangerous

condition on the premises that the owner knows or should know the invitees will not discover, realize, or protect themselves against.

*Still, Nemier, Tolari & Landry, P.C.* (by *Craig L. Nemier* and *Michelle E. Mathieu*), for the plaintiffs.

*Law Offices of Rice, Galin & Traurig* (by *Edward Traurig*), for the defendants.

Before: SMOLENSKI, P.J., and HOOD and M. J. CALLAHAN,* JJ.

SMOLENSKI, P.J. In these consolidated appeals, plaintiff Joseph H. Butler appeals as of right an order of summary disposition in favor of defendants Ramco-Gershenson, Inc., Pontiac Mall Limited Partnership, and Wineman Investment Company.[1] We affirm in part and reverse in part.

Plaintiff was an employee of Western Waterproofing Company, Inc. (WWC), an independent contractor that entered into a contract with defendant Pontiac Mall for brick replacement work on the north elevation of Hudson's three-story department store at Summit Place Mall. The mall is owned by defendants Pontiac Mall and Wineman Investment and managed by defendant Ramco-Gershenson.

To perform the brick restoration work, a frame scaffolding was erected on Hudson's roof to rise above the top of the building's parapet wall.[2] The

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Plaintiff Constance M. Butler, individually and as next friend of Jonathan C. Butler, also appeals as of right the same order. However, as these claims are derivative of the claims of plaintiff Joseph H. Butler, reference will be made in this opinion to plaintiff Joseph H. Butler.

[2] A parapet wall is a wall that extends above a roof. See *Wilhelm v Detroit Edison Co,* 56 Mich App 116, 124; 224 NW2d 289 (1974).

parapet wall was capped with precast concrete coping block. Booms or outriggers were mounted on the frame scaffolding to suspend spider scaffolding on which WWC employees performed the brick restoration work. On May 9, 1988, plaintiff was standing on the spider scaffolding when two pieces of coping block fell and hit him. Plaintiff sued defendants, among others, for his injuries. The trial court subsequently granted defendants' motion for summary disposition. Plaintiff appeals as of right.

Plaintiff first argues that the trial court erred in granting summary disposition of his claim premised on a theory of inherently dangerous activity. We note that although defendants' motion for summary disposition was premised on MCR 2.116(C)(8) and (10), the trial court did not specify the ground for its grant of summary disposition of this claim. However, because both parties relied on matters outside the pleadings in their arguments in opposition to and in support of this claim, we review this issue pursuant to MCR 2.116(C)(10).

On appeal, a trial court's determination concerning a motion for summary disposition is reviewed de novo. A motion for summary disposition pursuant to MCR 2.116(C)(10) tests the factual sufficiency of a claim. This Court must independently determine, giving the benefit of doubt to the nonmovant, whether the movant would have been entitled to judgment as a matter of law. *Lytle v Malady,* 209 Mich App 179, 183-184; 530 NW2d 135 (1995).

"The inherently dangerous activity doctrine is an exception to the general rule that an employer of an independent contractor is not liable for the contractor's negligence or the negligence of his employees." *Bosak v Hutchinson,* 422 Mich 712,

724; 375 NW2d 333 (1985). This exception extends to employees of the contractor performing the dangerous work. *Id.* Thus, as stated in *Bosak:*

> [A]n employer is liable for harm resulting from work "necessarily involving danger to others, unless great care is used" to prevent injury, *Inglis* [*v Millersburg Driving Ass'n,* 169 Mich 311, 331; 136 NW 443 (1912),] or where the work involves a "peculiar risk" or "special danger" which calls for "special" or "reasonable" precautions. 2 Restatement Torts, 2d, §§ 416, 427. It must be emphasized, however, that the risk or danger must be "recognizable in advance," i.e., at the time the contract is made, for the doctrine to be invoked. Thus, liability should not be imposed where a new risk is created in the performance of the work which was not reasonably contemplated at the time of the contract. [*Id.* at 727-728.]

After reviewing the record in this case, we conclude that unlike in *Oberle v Hawthorne Metal Products Co,* 192 Mich App 265, 269; 480 NW2d 330 (1991), which plaintiff cited, plaintiff has failed to produce any evidence that the risk or danger, i.e., that the coping would fall, was contemplated when the parties entered into the original contract or the first addendum thereto. Rather, giving the benefit of doubt to plaintiff, the evidence indicates that defendants knew only that the coping had been exposed to water and that the brickwork had been damaged.

Thomas Olson, a WWC foreman, testified at his deposition that before attaching the outriggers he had inspected all of the coping visually and by attempting to pick up the coping, and that the coping was not loose. The original contract (dated March 25, 1988) concerned replacement only of

"spalled,[3] shalling, loose and otherwise defective brick masonry" on lower areas of the wall. The March 31, 1988, "Scope of Work" memorandum from Louis Ciotti of WWC instructed WWC employees to take care in preventing brick masonry from dropping to the ground and injuring people or landscaping. This memo did not refer to coping falling from above onto employees working on the scaffolding.

Ciotti testified that after work had commenced on the lower wall pursuant to the original contract, problems in the upper wall were discovered, i.e., "rusted tie bars, the shelf angles down below and the bulges in the masonry wall where the brick had separated," and that these problems indicated that the upper portion of the wall was in "kind of a deteriorated state." Again, this evidence concerns only deterioration of the brickwork.

On April 22, 1988, the consulting engineers of Ehlert-Bryan, Inc., visited the building at defendant Ramco-Gershenson's request to review the brick restoration work. Although Ehlert-Bryan's April 26, 1988, letter to defendant Ramco-Gershenson concerning this visit recognizes that the coping was subject to water infiltration, it does not indicate that Ehlert-Bryan realized that the coping would be likely to fall. Rather, the letter discusses extending the life of the coping by applying silicone sealer.

The first addendum (dated May 5, 1988) to the original contract concerned only removal and replacement of "all brick veneer masonry between the coping and the existing steel shelf angle approximately 4 feet below the top of the wall."[4]

---

[3] "Spalled" brick means that the face of the brick has fallen off and the portion of the remaining brick appears darker, thus creating an unacceptable appearance.

[4] On appeal, plaintiff also relies on an April 14, 1988, letter from

A May 19, 1988, letter from Mark Michener, a roofing consultant from Soil and Materials Engineers, Inc. (SME), to Ruth McCarthy, general manager of Summit Place Mall, provided in part as follows:

> On May 6, 1988, we visited the Summit Place Mall in Waterford Township, Michigan. The purpose of our visit was to determine rehabilitation strategies for the precast coping parapet detail at various locations of the Mall (see separate report). Mr. Louis Ciotti of Western Waterproofing was also present to provide input from his recent experience with the Hudson's masonry restoration.

First, although Michener's inspection occurred before plaintiff was injured, the letter transmitting the information discerned by Michener was not dated until after plaintiff was injured. Moreover, the remainder of this letter does not concern the coping, but rather concerns Michener's observations of splitting in the roof membrane and recom-

Ciotti to Ruth McCarthy containing the recommendations that subsequently became the subject of the first addendum. This letter also provided in relevant part:

> Confirming our meeting in your office with reference to the exterior brick veneer masonry which has bowed, bulged and moved out of its proper alignment due to the rusting of the supporting shelf angles and the deterioration of the wall ties, our company wishes to submit the following recommendations to restore these areas back to their original, structurally sound and watertight conditions as noted below . . . .

However, our review indicates that neither defendants nor plaintiff submitted this letter to the trial court in support of or opposition to the motion for summary disposition. This Court disregards documents attached as exhibits on appeal that were not made part of the record below. *Isagholian v Transamerica Ins Corp,* 208 Mich App 9, 18; 527 NW2d 13 (1994). In any event, as indicated previously in the text, plaintiff did submit the substance of the letter below in the form of Ciotti's testimony concerning the nature of the subsequently discovered defects in the upper wall. Again, this evidence concerned only the deteriorated brickwork.

mendations for protecting the roof. McCarthy explained at her deposition that in April and May of 1988

> [t]he entire mall was being discussed with SME for a series of coping replacement possibilities because we were also reroofing areas of the entire—not the expanded mall, but the existing mall, were already reroofing section at a time the [sic] existing roofs of the existing mall, and coping was included in that and SME was involved in that. This had nothing to do at this point with the Hudson building.

Thus, Michener's May 19, 1988, letter and McCarthy's deposition testimony do not indicate that "rehabilitation strategies" were being considered for the coping because it was in danger of falling.

An accident investigation report by the Michigan Department of Labor, Bureau of Safety and Regulation, following plaintiff's injury indicates that the outrigger was resting on top of the coping and that when plaintiff "operated the spyder the outrigger shifted causing the coping whose foundation had deteriorated to fall down" and strike plaintiff. However, this report is not indicative of defendants' knowledge of the risk or danger that the coping would fall at the time the parties entered into the original contract or the first addendum.

Accordingly, we affirm the trial court's grant of summary disposition pursuant to MCR 2.116(C)(10) in favor of defendants with regard to plaintiff's claim of inherently dangerous activity.

Next, plaintiff argues that the trial court erred in granting summary disposition of his premises liability claim. In order to put our disposition of this issue in context, a brief review of the proceedings below is necessary.

In their brief in support of their motion for

summary disposition below, defendants quoted the following relevant portion of plaintiff's *April 2, 1990,* first amended complaint:

> 5. That during said employment Plaintiff was caused to suffer injury and damage, as a result of the wrongful acts of Defendants.
> 6. That the wrongful acts of the Defendants include but are not necessarily limited to:
> a. retaining control of said project and failing to enforce adequate safety measures for the safety of workers;
> b. failing to enforce adequate safety measures for the workers in the inherently dangerous project; and
> c. other acts of wrongdoing to be discovered.

In reliance on these allegations, defendants argued in their brief that summary disposition should be granted pursuant to MCR 2.116(C)(8) because they owed no duty to plaintiff to provide him with a safe workplace where such duty rested on wwc as plaintiff's employer pursuant to § 11, MCL 408.1011; MSA 17.50(11), of the Michigan Occupational Safety and Health Act, MCL 408.1001 *et seq.*; MSA 17.50(1) *et seq.* Defendants also argued that summary disposition pursuant to MCR 2.116(C)(10) was appropriate because plaintiff had failed to create a question of fact concerning whether they had retained control of the project pursuant to *Plummer v Bechtel Construction Co,* 182 Mich App 308; 451 NW2d 631 (1990), rev'd 440 Mich 646; 489 NW2d 66 (1992),[5] and *Samodai v Chrysler Corp,* 178 Mich App 252; 443 NW2d 391 (1989). And, as indicated previously, defendants argued that summary disposition of plaintiff's in-

---

[5] We note that this Court's opinion in *Plummer* was reversed by our Supreme Court after defendants filed their briefs on appeal in this Court.

herently dangerous activities claim was appropriate.

In response to defendants' motion, plaintiff argued that questions of fact existed concerning the theories of retained control and inherently dangerous activities alleged in his *May 7, 1991,* complaint. Plaintiff, relying on *Perry v McLouth Steel Corp,* 154 Mich App 284; 397 NW2d 284 (1986), also alleged that defendants had failed to address the theory asserted in this complaint that defendants were liable under the "safe place to work" doctrine. (We note that earlier in the lower court proceedings the parties had stipulated that the May 7, 1991, complaint would be considered the second amended complaint. Thus, defendants erroneously relied on portions of the first amended complaint in their motion for summary disposition below.) Plaintiff contended that the "safe place to work" doctrine and the "retained control" doctrine were two separate theories of liability that defendants were attempting to treat as one theory of liability.

In their reply to plaintiff's response, defendants asserted that they had addressed plaintiff's safe place to work theory when they argued that wwc, as plaintiff's employer, owed plaintiff the duty to provide a safe workplace pursuant to § 11 of the Michigan Occupational Safety and Health Act. Defendants distinguished plaintiff's reliance on the premises liability case of *Beals v Walker,* 416 Mich 469; 331 NW2d 700 (1982), by arguing that they owed no duty to plaintiff unless they had retained control of the work.

At the January 10, 1992, hearing regarding defendants' motion, defendants again argued that they had not retained control of the project, that they owed no duty to provide plaintiff with a safe workplace, and that the project was not inherently

dangerous. Plaintiff countered that a question of
fact existed concerning defendants' liability under
plaintiff's safe place to work theory, which plaintiff
now referred to as a premises liability theory,
where WWC had not contracted to repair the cop-
ing and defendants were on notice of problems
with the coping. Plaintiff also argued that ques-
tions of fact existed concerning his inherently
dangerous activities theory and retained control
theory. In response to plaintiff's arguments, defen-
dants again contended that no liability existed
because they had not retained control of the proj-
ect. The trial court simply granted the motion for
summary disposition in favor of defendants with-
out specifying the grounds therefor.

On appeal, plaintiff does not contest the trial
court's grant of summary disposition of his re-
tained control theory. Rather, plaintiff argues on
appeal that his premises liability theory is a the-
ory separate and distinct from the retained control
and inherently dangerous activities theories.
Plaintiff argues that defendants misapprehended
this distinction below, and that the trial court,
presumably relying on defendants' brief below,
was likewise misled. Defendants reiterate their
arguments presented below.

As stated in *Samodai, supra* at 255:

> As a general rule, an owner of property is not
> liable to an employee of an independent contractor
> for negligence. *Funk v General Motors Corp*, 392
> Mich 91, 101; 220 NW2d 641 (1974) [overruled in
> part on another ground *Hardy v Monsanto Enviro-
> Chem Systems, Inc*, 414 Mich 29; 323 NW2d 270
> (1982)]; *Wolfe v Detroit Edison Co*, 156 Mich App
> 626, 627; 402 NW2d 16 (1986), lv den 428 Mich 865
> (1987). In such situations, the actual employer of a
> worker is immediately responsible for job safety
> and for maintaining a safe work place. *Funk,*

*supra*, p 102. The two main exceptions to this general rule provide for liability if: (1) the property owner retains control over the work done and the contractor's activities or (2) the work is inherently dangerous—the work can reasonably be foreseen as dangerous to third parties. *Bosak v Hutchinson*, 422 Mich 712, 724; 375 NW2d 333 (1985); *Wolfe, supra.*

However, a premises owner has a duty to exercise reasonable care to protect invitees, i.e., persons who enter the premises at the owner's express or implied invitation to conduct business concerning the owner, from an unreasonable risk of harm caused by a dangerous condition of the land that the owner knows or should know the invitees will not discover, realize, or protect themselves against. *Bertrand v Alan Ford, Inc*, 449 Mich 606, 609; 537 NW2d 185 (1995); *Riddle v McLouth Steel Products Corp*, 440 Mich 85, 90, n 4; 485 NW2d 676 (1992). This duty of care generally extends to invitees who are employees of independent contractors.[6] *Beals, supra*; see also *Perry, supra* at 299-300; *Wilhelm v Detroit Edison Co*, 56 Mich App 116, 135; 224 NW2d 289 (1974); *McCord v United States Gypsum Co*, 5 Mich App 126; 145 NW2d 841 (1966); see also Prosser & Keeton, Torts (5th ed), § 61, p 419, § 71, pp 510-511.

Plaintiff relies on *Perry, supra*, for his argument

---

[6] However, an exception exists to this rule: a premises owner is not liable when the independent contractor's employee comes upon the premises to correct the condition that causes the injury. *Nemeth v Detroit Edison Co*, 26 Mich App 481; 182 NW2d 617 (1970); see also *Wilhelm, supra* at 133; 41 Am Jur 2d, Independent Contractors, § 42, p 442. Plaintiff contends on appeal, as he did below, that this exception is not applicable in this case. Again, we are unable to determine from the record whether the trial court based its grant of summary disposition on this issue. However, we cannot say that defendants did not owe a duty of care to plaintiff where the original contract and the first addendum did not involve repairs to the coping, but rather were for brick restoration work only. *Wilhelm, supra; Nemeth, supra.*

that premises liability is a separate theory. In *Perry,* the plaintiffs, an employee of an independent contractor hired by the defendant and his wife, sued the defendant for injuries the plaintiff employee sustained while working on the defendant's premises. The plaintiffs' negligence claim proceeded to trial on three alternative theories:

> [F]irst, that defendant, as property owner, was negligent in maintaining the premises; second, that defendant had retained control over the work site; and third, that the work was inherently dangerous. [*Id.* at 288.]

Following the plaintiffs' proofs, the trial court found that the plaintiffs' claim "was 'a straight negligence case'" and granted the defendant a directed verdict on the retained control and inherently dangerous activities theories on the ground that these theories were therefore irrelevant. *Id.* The jury subsequently found that the defendant was not negligent. *Id.* On appeal, the plaintiffs argued that the trial court had erred in granting a directed verdict on the retained control and inherently dangerous activity theories. *Id.* at 296. Concerning the retained control theory, this Court disagreed:

> We agree with the trial court that the retained control theory was inapplicable to the facts in the case. Plaintiffs did not argue that defendant exercised its retained control of the work improperly, but, rather, their claim was based on the condition of the premises. Under plaintiffs' theory of the case, defendant was not vicariously liable for the negligence of the contractor but rather was personally liable as owner of the premises. The retained control theory exists as an exception to the general rule regarding an owner's liability for a contractor's negligence. Neither the general rule

nor the exception is relevant to plaintiffs' premises liability theory. [*Id.* at 299-301.]

See also Prosser & Keeton, § 71, pp 510-511.

However, this Court reversed the grant of a directed verdict on the issue of inherently dangerous activity because a question of fact had existed concerning whether the work in question had been inherently dangerous. *Id.* at 302-303.

Thus, we agree that the theories of retained control and premises liability are separate theories. The trial court erred if it granted the motion for summary disposition on the ground that defendants owed no duty to plaintiff pursuant to defendants' theory of retained control. We therefore review the record to determine whether plaintiff's pleadings and documentary evidence concerning his premises liability claim were sufficient to withstand motions for summary disposition pursuant to MCR 2.116(C)(8) and (10).

As explained in *Eason v. Coggins Memorial Christian Methodist Episcopal Church,* 210 Mich App 261, 263; 532 NW2d 882 (1995):

> A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim by the pleadings alone. . . . This Court reviews a trial court's decision under MCR 2.116(C)(8) de novo and determines "if the claim is so clearly unenforceable as a matter of law that no factual development could establish the claim and justify recovery. . . . All factual allegations supporting the claim are accepted as true, as well as any reasonable inferences or conclusions that can be drawn from the facts. . . . However, mere conclusions, unsupported by allegations of fact, will not suffice to state a cause of action. . . . In a negligence action, summary disposition is proper under MCR 2.116(C)(8) if it is determined as a matter of law that the defendant

owed no duty to the plaintiff under the alleged facts. . . . [Citations omitted.]

"A claim that the invitor has breached the duty to exercise reasonable care to protect invitees from unreasonable risks of harm has traditionally been premised on three theories: failure to warn, negligent maintenance, or defective physical structure. Consequently, invitors may be held liable for an invitee's injuries that result from a failure to warn of a hazardous condition or from the 'negligent maintenance of the premises or defects in the physical structure of the building.' " *Bertrand, supra* at 610.

The premises owner must inspect the premises to discover possible defects. *Kroll v Katz,* 374 Mich 364, 373; 132 NW2d 27 (1965). The premises owner's duty to warn includes the duty to warn of hidden or latent defects of which the premises owner knows or ought to know and of which the invitee is not aware. *Riddle, supra* at 91. However, a premises owner does not owe a duty to protect invitees where conditions arise from which an unreasonable risk cannot be anticipated. *Riddle, supra* at 94.

In this case, plaintiff's second amended complaint alleged in relevant part that defendants owned or operated the building, that plaintiff was a business invitee,[7] and that defendants owed plaintiff a duty "to seek out and determine any unsafe condition in the coping located on the project and warn" plaintiff of the unsafe condition. The complaint further alleged that defendants breached their duty by failing "to discover and warn of an unsafe condition when defendants either knew or should have known their failure could and would result in injury," and that plain-

---

[7] Defendants have not contested plaintiff's status as an invitee.

tiff's injuries were caused by defendants' negligence. Where plaintiff's complaint placed defendants on sufficient notice that plaintiff would try to prove a latent defect in the building's coping that defendants should have but failed to identify and warn plaintiff about, we conclude that plaintiff's complaint stated a claim of premises liability. MCR 2.116(C)(8); *Riddle, supra* at 96. The trial court erred if it determined otherwise.

The documentary evidence indicates that Olson, a wwc foreman, had determined that the coping was not loose. However, after wwc began its brick restoration work on the lower wall under the original contract, problems such as rusted tie bars and bulges in the masonry were observed. In particular, Ehlert-Bryan's letter indicates that wwc had found "serious moisture infiltration into the brick and block wall over a period of years," and that the "brick deterioration problems are a result of or at least influenced by water infiltration into the wall through the precast copings." Plaintiff's injury occurred approximately two weeks later. Defendants argue on appeal that they could not have anticipated that the coping would fall when none of the professionals they hired anticipated that this would occur. However, Ciotti testified at his deposition that persons employed by defendant Ramco-Gershenson had discussed with him placing a "metal cap flashing over the coping . . . to help retard the deterioration from water running down the wall because of the nature of the brick. In addition, Ehlert-Bryan, in its letter, indicates that it visited the work site primarily to review the brick restoration work, not the coping. Moreover, this letter indicates:

When the copings were set, all of the joints were

probably mortar joints. While this was quite common at the time the building was constructed, we have since learned that soft joints should be placed in stone and precast copings at a [sic] approximately a 10 to 12 foot spacing to allow for differential movements under thermal stresses without rupturing the joints.

We acknowledge that a premises owner does not owe a duty to protect his invitees where conditions arise from which an unreasonable risk cannot be anticipated. *Riddle, supra.* However, in giving the benefit of doubt to plaintiff, we conclude only that a question of fact existed concerning whether defendants should have known of the existence of the risk that the coping might fall where they were on notice approximately two weeks[8] before plaintiff was injured that moisture had infiltrated through the coping and caused damage to the brickwork. *Riddle, supra; Lytle, supra.*

Last, we believe that defendants' contention that plaintiff's injuries "may have been caused by . . . the way the scaffolding had been rigged by Western Waterproofing as evidenced by the safety citations issued against them by the Michigan Department of Labor" involves a question of fact.

Accordingly, we conclude that the trial court erred in granting summary disposition pursuant to MCR 2.116(C)(10) in favor of defendants with regard to plaintiff's claim of premises liability. Therefore, we reverse the trial court's grant of summary disposition of this claim.

Affirmed in part and reversed in part. We do not retain jurisdiction.

---

[8] From April 26, 1998, the date of Ehlert-Bryan's letter, until plaintiff's injury on May 9, 1988.