*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JAMES S. RAHAIM and NICOLE WILSKI,

Plaintiffs-Appellants,

v

LEET DENTON and PATSY DENTON,

Defendants/Third-Party Plaintiffs-
Appellees,

and

FORMAN JOHNSTON REALTY, INC., doing
business as BOLTON JOHNSTON ASSOCIATES
OF GROSSE POINTE,

Defendants-Appellees,

and

BELINE OBEID, LLC, doing business as BELINE
OBEID REALTY, and BELINE OBEID,

Third-Party Defendants.

UNPUBLISHED
August 29, 2019

No. 342221
Macomb Circuit Court
LC No. 2017-001935-CK

Before: K. F. KELLY, P.J., and TUKEL and REDFORD, JJ.

PER CURIAM.

This case arises from the sale of real property, in which plaintiffs allege that the sellers, defendants Leet Denton and Patsy Denton, wrongfully removed certain fixtures from the premises. Defendant Forman Johnston Realty, Inc. ("Forman Johnston") was the real estate agent for the Dentons. Plaintiffs appeal as of right the trial court's order granting summary disposition in favor of defendants. We affirm.

-1-

# I. BACKGROUND

In May 2016, the Dentons listed for sale their real property ("the property"). The Dentons employed co-defendant Forman Johnston as their listing agent. In October 2016, the Dentons began conducting negotiations with plaintiffs for the sale of the property. During this time, plaintiffs visited the property on three separate occasions: October 22, 2016; January 8, 2017; and January 26, 2017.

On March 21, 2017, the parties executed an agreement ("the Purchase Agreement"), which was prepared by plaintiffs' real estate agent Beline Obeid, LLC, in which plaintiffs would purchase the property from the Dentons for $3.5 million. Paragraph 2 of the Purchase Agreement covered the scope of the agreement, setting forth what was being conveyed in the sale. It states, in pertinent part:

> SUBJECT TO ZONING ORDINANCES, BUILDING AND USE RESTRICTIONS, IF ANY, AND EASEMENTS OF RECORD, together with all improvements and appurtenances, now in and or on the property and including the security system; all attached carpeting; all attached lighting fixtures; . . . all window treatments and electrical fixtures as shown. . . .

And under the "GENERAL CONDITIONS" heading, the PA provides the following:

> **B)** It is understood that this property is being purchased in its present condition, "AS IS" and that it will be in substantially the same condition at time of closing as when this offer was made except as may be required by paragraph 13. This agreement supersedes any and all understandings and agreements and constitutes the entire agreement between the parties hereto and the broker or his representative and no oral representations or statements shall be considered a part hereof. Purchaser and Seller acknowledge that no representations, promises, guarantees, or warranties of any kind, including, but not limited to, representations as to the condition of the land and structures, were made by the Broker, any cooperating Broker, or the Purchaser's representatives or any sales persons or persons associated with these Brokers.

> **C)** Seller and Purchaser hereby release Broker and any cooperating Broker(s) in this transaction, their respective agents, employees, attorneys, and representatives with respect to all claims arising out of the performance of this Contract For The Sale of Real Estate and any addenda or counteroffers, all claims arising by virtue of any purported representations to Seller or Buyer as to the condition of the property, and all claims arising from the existence of any special assessments which have been, or may in the future be levied against the land and structures which are the subject of their Contract For The Sale of Real Estate.

> \* \* \*

> **P)** This offer is contingent upon the Purchaser signifying in writing by 03/24/2017 . . . that the Purchaser is satisfied with the results of the inspection of

said property . . . . Purchaser acknowledges that he is purchasing the property in "AS IS" condition and that he is satisfied with the property. . . .

Plaintiffs conducted an inspection of the property on March 23, 2017, and requested a reduction of the sales price to $3,460,000 for seawall updates required on the property. The Dentons agreed to the price reduction. On April 28, 2017, the parties executed a Land Contract which stated that the sale includes "all tenements, hereditaments, improvements, and appurtenances, now on or affecting the Premises."

Plaintiffs took possession of the property on or about May 1, 2017. Shortly thereafter, plaintiffs contacted the Dentons and asked for certain fixtures to be returned. The Dentons refused, stating that the fixtures were not part of the sale.

On May 23, 2017, plaintiffs filed a three-count complaint. In the first count, plaintiffs alleged that the Dentons breached ¶ 2 of the Purchase Agreement, by removing expensive fixtures from the property without plaintiffs' knowledge or consent. In the second count, plaintiffs alleged wrongful conversion of the fixtures by the Dentons. In the third count, plaintiffs alleged fraud by the Dentons and Forman Johnston. Plaintiffs alleged that defendants committed fraud by (1) failing to notify plaintiffs that the fixtures were going to be removed from the property and (2) by making "false representations of material facts," which purportedly led plaintiffs to believe that the fixtures were part of the agreement and would remain with the premises.

The Dentons and Forman Johnston moved for summary disposition of plaintiffs' claims. The court granted the motions, finding that there was no genuine issue of material fact that the fixtures had been removed well before the Purchase Agreement was executed, thereby defeating plaintiffs' claims of breach of contract and conversion. The trial court also ruled that no genuine issue of material fact existed as to plaintiffs' fraud claims.

## II. STANDARD OF REVIEW

Issues concerning the proper interpretation of contracts, which are questions of law, are reviewed de novo. *Archambo v Lawyers Title Ins Corp*, 466 Mich 402, 408; 646 NW2d 170 (2002). A trial court's decision on a motion for summary disposition also is reviewed de novo. *Veenstra v Washtenaw Country Club*, 466 Mich 155, 159; 645 NW2d 643 (2002).

"A motion under MCR 2.116(C)(10)[1] tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion."

---

[1] Although defendants moved for summary disposition under both MCR 2.116(C)(8) and (C)(10), because the parties and the trial court relied on materials outside the pleadings, the motions are properly considered as being decided under MCR 2.116(C)(10). *Butler v Ramco-Gershenson, Inc*, 214 Mich App 521, 524; 542 NW2d 912 (1995).

-3-

*Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). The motion is properly granted if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. *Smith v Globe Life Ins Co*, 460 Mich 446, 454-455; 597 NW2d 28 (1999).

## II. ANALYSIS

Plaintiffs argue that the trial court erred when it granted summary disposition in favor of defendants on the claims of breach of contract, conversion, and fraud. We disagree.

## A. BREACH OF CONTRACT

Plaintiffs aver that a genuine issue of material fact exists as to whether the Dentons breached ¶ 2 of the Purchase Agreement by removing fixtures from the property, which therefore would necessitate a denial of the Dentons' motion for summary disposition. Plaintiffs assert that there is a factual dispute as to when the fixtures were removed from the property.

When claiming a breach of contract, plaintiffs must establish "(1) that there was a contract, (2) that the other party breached the contract, and (3) that the party asserting breach of contract suffered damages as a result of the breach." *Miller-Davis Co v Ahrens Const, Inc*, 296 Mich App 56, 71; 817 NW2d 609 (2012). Here, there is no dispute that a written contract existed between plaintiffs and defendants. Paragraph 2 of the Purchase Agreement provides:

> SUBJECT TO ZONING ORDINANCES, BUILDING AND USE RESTRICTIONS, IF ANY, AND EASEMENTS OF RECORD, together with all improvements and appurtenances, *now in and or on the property* and including the security system; all attached carpeting; all attached lighting fixtures; . . . all window treatments and electrical fixtures as shown. . . . [Emphasis added.]

The important word in this paragraph is "now." The Purchase Agreement was executed on March 21, 2017. Thus, by the plain terms of the contract, only those fixtures on the property *as of that date* were included in the sale of the home. Here, the evidence is uncontradicted that the fixtures in question were removed no later than February 10, 2017, roughly 40 days before plaintiffs executed the Purchase Agreement. In support of their motion for summary disposition, the Dentons submitted invoices from contractors, which showed that the fixtures had been removed on August 9, 2016, January 27, 2017, and February 10, 2017. In contesting the Dentons' motion for summary disposition, plaintiffs presented no specific evidence to suggest that any of the fixtures were on the property at the time the Purchase Agreement was executed. Instead, plaintiffs' affidavits merely provide that plaintiffs observed "all or some" of the fixtures when they visited the property on October 6, 2016, January 8, 2017, and January 26, 2017. Importantly, these dates are all before the date plaintiffs and the Dentons executed the Purchase Agreement. Consequently, plaintiffs have not established that a genuine issue of material fact exists as to whether the Dentons breached the Purchase Agreement, and the trial court properly granted the Dentons' motion for summary disposition on this count.

Plaintiffs also relied on an e-mail written by defendant Leet Denton, in which he provided dates for when the removal of the fixtures took place, which differed from the dates set

forth in the invoices the Dentons attached to their motion for summary disposition. But these discrepancies do not create a factual question sufficient to defeat the Dentons' motion. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003); see also *Grettenberger Pharmacy, Inc v Blue Cross-Blue Shield of Mich*, 98 Mich App 1, 14; 296 NW2d 589 (1980) ("The mere existence of issues of fact is no bar to entry of summary judgment if, upon resolving all such issues in favor of [the nonmoving party], the [moving party] would still be entitled to judgment as a matter of law.").

In the pertinent e-mail, Leet Denton stated:

> The 3 chandeliers and the 4 sconces in the foyer were removed by Lighthouse Electric Company July 29-Agust [sic] 1[,] 2016, the sink in the powder room was removed Jan. 27, 2017, by Hoyle plumbing and the 4 sconces in the master bath were removed by Lighthouse Electric company Feb. 17, 2017.

Some of the information in the e-mail does contradict the information contained in the invoices the Dentons submitted. While the differences between what was stated in the e-mail and what was provided for in the invoices do create questions of fact, they are not issues of *material* fact. In other words, *none of the evidence* stands for the proposition that the fixtures were in the home at the time the Purchase Agreement was executed. Accordingly, when viewing the evidence in the light most favorable to plaintiffs, reasonable minds could not conclude that the fixtures were present as of the time of the Purchase Agreement's execution, which is fatal to plaintiffs' breach of contract claim.

## B. CONVERSION

Plaintiffs argue that summary disposition was not warranted on their claim for conversion. Pursuant to MCL §600.2919a, statutory conversion consists of "another person's converting property to the other person's own use." It "requires a showing that the defendant employed the converted property for some purpose personal to the defendant's interests, even if that purpose is not the object's ordinarily intended purpose." *Aroma Wines & Equip, Inc v Columbian Distribution Servs, Inc*, 497 Mich 337, 340; 871 NW2d 136 (2015).

Here, plaintiffs rely on their claimed contractual right to the fixtures to substantiate their conversion claim; however, we have already determined that there was no contractual breach by the Dentons. Again, the Purchase Agreement only transferred interests of fixtures that were on the property as of March 21, 2017. There was no evidence to show that the fixtures were present on that date. Thus, the fixtures were not included in the sale of the property; the Dentons remained the rightful owners of the fixtures, which bars plaintiffs' conversion claim.

## C. FRAUD

Unlike plaintiffs' other claims, plaintiffs' claim of fraud is against the Dentons and Forman Johnston. The claim, although titled simply "fraud," implicates both fraudulent misrepresentation and silent fraud.

## 1. FRAUDULENT MISREPRESENTATION

"To prove a claim of fraudulent misrepresentation, or common-law fraud, a plaintiff must establish that: (1) the defendant made a material representation; (2) the representation was false; (3) when the representation was made, the defendant knew that it was false, or made it recklessly, without knowledge of its truth, and as a positive assertion; (4) the defendant made it with the intention that the plaintiff should act upon it; (5) the plaintiff acted in reliance upon the representation; and (6) the plaintiff thereby suffered injury." *Roberts v Saffell*, 280 Mich App 397, 403; 760 NW2d 715 (2008).

Here, the trial court determined that there was "no genuine issue of material fact that any type of fraud was perpetuated." We agree. Regarding any claims of fraudulent misrepresentation, plaintiffs provided no evidence to show that the Dentons or Forman Johnston made any affirmative misrepresentations.

With respect to defendant Forman Johnston, plaintiffs alleged that Forman Johnston committed fraud by including pictures of the fixtures in its advertising of the property for sale. This claim fails for three reasons. First, plaintiffs agreed to release the brokers involved in the transaction from liability. The Purchase Agreement specifically provided that

> Seller and Purchaser hereby release Broker and any cooperating Broker(s) in this transaction, their respective agents, employees, attorneys, and representatives with respect to all claims arising out of the performance of this Contract For The Sale of Real Estate and any addenda or counteroffers, all claims arising by virtue of any purported representations to Seller or Buyer as to the condition of the property, and all claims arising from the existence of any special assessments which have been, or may in the future be levied against the land and structures which are the subject of their Contract For The Sale of Real Estate.

Second, in the Purchase Agreement, plaintiffs assented to there having been no representations made outside the Purchase Agreement:

> Purchaser and Seller acknowledge that no representations, promises, guarantees, or warranties of any kind, including, but not limited to, representations as to the condition of the land and structures, were made by the Broker, any cooperating Broker, or the Purchaser's representatives or any sales persons or persons associated with these Brokers.

Thus, this merger clause defeats plaintiffs' claim that any representations outside the contract were made. Third, assuming without deciding that such pictures could constitute an affirmative representation that the fixtures were to be included in the sale of the property, the listing in which those pictures were contained included a statement that a "few exclusions" applied to the listing. Thus, the listing, while leaving the extent of the "exclusions" open-ended, is insufficient on its face to support a claim of fraudulent misrepresentation.

And with respect to any fraudulent misrepresentation claims against the Dentons, plaintiffs provided no evidence that the Dentons had made any affirmative misrepresentations at all, let alone any representations that plaintiffs relied upon.

## 2. SILENT FRAUD

Plaintiffs' remaining fraud claims against defendants implicate the doctrine of "silent fraud."

> Silent fraud or fraudulent concealment has also long been recognized in Michigan. A fraud arising from the suppression of the truth is as prejudicial as that which springs from the assertion of a falsehood, and courts have not hesitated to sustain recoveries where the truth has been suppressed with the intent to defraud. But for the suppression of information to constitute silent fraud there must exist a legal or equitable duty of disclosure. Further, establishing silent fraud requires more than proving that the seller was aware of and failed to disclose a hidden defect. Instead, to prove a claim of silent fraud, a plaintiff must show some type of representation by words or actions that was false or misleading and was intended to deceive. [*Id.* at 403-404 (quotation marks and citations omitted).]

The essence of plaintiffs' claim against the Dentons is that they failed to disclose during negotiations for the sale of property that they intended to remove the fixtures. However, plaintiffs provided no evidence or authority that a legal duty existed on behalf of the Dentons to make any such disclosures. See *Houghton v Keller*, 256 Mich App 336, 339; 662 NW2d 854 (2003) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims."). Regardless, we have not found any caselaw which would support such a conclusion. Thus, with no duty to disclose, plaintiffs' silent fraud claim necessarily fails. See *Roberts*, 280 Mich App at 404; *M&D, Inc v WB McConkey*, 231 Mich App 22, 31; 585 NW2d 33 (1998) (stating that silent fraud is only actionable if it occurred when there was a duty to disclose). Furthermore, there is no evidence that plaintiffs had asked the defendants any questions that arguably might have imposed on defendants an obligation to disclose. Such questions pertaining to the fixtures seemingly would have imposed an equitable duty on the Dentons to disclose that the fixtures were not included with the sale. See *M&D, Inc*, 231 Mich App at 33 (stating that an equitable duty to disclose can arise when buyers of real estate "express particularized concern or directly inquire of the seller"). But with no evidence of any such question, no equitable duty existed. And with no legal or equitable duty to disclose, summary disposition was proper on plaintiffs' claim of silent fraud.

With respect to defendant Forman Johnston, plaintiffs alleged that once Forman Johnston had actual knowledge of the Dentons' intention to remove the fixtures from the property, it nevertheless failed to disclose this information to plaintiffs. Again, plaintiffs failed to provide sufficient evidence or authority that a legal duty existed on behalf of Forman Johnston to make any such disclosure. Indeed, "Michigan jurisprudence had never imposed on sellers' agents a duty per se of disclosure to buyers . . . ." *Alfieri v Bertorelli*, 295 Mich App 189, 194; 813 NW2d 772 (2012). Although "a duty of disclosure may be imposed on a seller's agent to disclose newly acquired information that is recognized by the agent as rendering a prior

affirmative statement untrue or misleading," *id*., there is no evidence to show that any "prior affirmative statement" had ever been made regarding the fixtures. Thus, with no duty to disclose, plaintiffs' silent fraud claim against Forman Johnston necessarily fails, and Forman Johnston's motion for summary disposition appropriately was granted.

Affirmed. Defendants, as the prevailing parties, may tax costs pursuant to MCR 7.219.

/s/ Kirsten Frank Kelly
/s/ Jonathan Tukel
/s/ James Robert Redford